1999 UT 85

**Nina E. BUTLER, Plaintiff and Appellant,**

v.

**Robert G. NAYLOR, M.D., Defendant and Appellee.**

**No. 980037.**

Supreme Court of Utah.

Sept. 10, 1999.

Robert M. Anderson, Salt Lake City, for plaintiff.

P. Keith Nelson, Mark L. McCarty, for defendant.

HOWE, Chief Justice:

## INTRODUCTION

¶ 1   Plaintiff Nina E. Butler brought this action against defendant Robert G. Naylor, M.D., alleging that he negligently performed a sphincterotomy on her.  Dr. Naylor denied any negligence, and the jury returned a verdict in his favor.  Butler moved for a new trial contending the trial court erred by (1) admitting an excerpt from the Zollinger medical text into evidence as an exhibit and allowing the jury to take it into the jury room during deliberations, and (2) giving jury instruction regarding alternative treatment methods.  Butler's motion was denied, and she now appeals.

## BACKGROUND

¶ 2   In August 1992, Butler was experiencing severe diarrhea.  She discussed the problem with Dr. Charles Arena who referred her to Dr. Dennis Avner, a gastroenterologist.  In September 1992, Dr. Avner performed a colonoscopy on Butler and subsequently diagnosed her with inflammatory bowel disease.  Dr. Avner then referred Butler to the defendant, Dr. Naylor, a general surgeon.

¶ 3   On October 15, 1992, Dr. Naylor diagnosed Butler with a large posterior anal ulcer and a tight anal sphincter.  He recommended both the excision of the anal ulcer and a sphincterotomy to release the tight anal sphincter.  One week later, he performed the recommended surgery on Butler.  In the four months following the surgery, Butler had at least four follow-up visits with Dr. Naylor.  She also had at least five meetings with Dr. Arena within a year of her surgery.  Butler did not mention any incontinence or other bowel problems during these visits with either physician.

¶ 4   Butler's first documented complaints of post-surgery incontinence came during visits with Dr. Kathleen Boynton in November and December of 1993 and January of 1994.  Upon examination, Dr. Boynton determined that Butler's rectal tone was normal, but was unable to find the cause of her incontinence.  In the months following her examination by Dr. Boynton, Butler met with a number of physicians and surgeons, none of whom linked her incontinence with the surgery performed by Dr. Naylor.

¶ 5   Butler was eventually examined by doctors at the Mayo Clinic in Scottsdale, Arizona.  The doctors there determined that the cause of her incontinence may have been a shorter than normal anal canal.  To remedy the condition, Butler underwent an anoplasty, a twelve-minute operation which lengthens the anal canal.  The doctors performing the operation found nothing indicating that the surgery Dr. Naylor performed caused Butler's incontinence, and the anoplasty's purpose was not to remedy anything that Dr. Naylor had done.  Following the anoplasty, Butler noticed some limited improvement, but experienced continued incontinence accompanied by emotional trauma resulting from the inability to control her bowels.

¶ 6   On May 2, 1995, Butler filed this action against Dr. Naylor alleging medical malpractice in connection with the surgery to remove her anal ulcer and release the tight sphincter.  As part of his defense, Dr. Naylor testified that the surgery on Butler was performed in a manner consistent with the procedure outlined in a general surgical text authored by Robert M. Zollinger and Robert M. Zollinger, Jr. ("Zollinger text").  That procedure involved making a one- by three millimeter incision in the scarred subcutaneous portion of the external sphincter in order to relax a band of scar tissue that circled the anus.  Dr. Naylor relied on the text to prove that he performed the sphincterotomy on Butler according to standard surgical technique as recognized by the medical community.  Over Butler's objections, the portion of

the Zollinger text which Dr. Naylor relied upon was introduced into evidence as an exhibit; thereafter, it was delivered to the jury for use in deliberations.

¶ 7    Following the presentation of all evidence and closing arguments, the court excused the jury to commence their deliberations after which the trial court heard counsel's objections to the jury instructions. Butler objected to instruction thirty-eight which read, in sum, that when more than one method of diagnosis or treatment is recognized by a respectable portion of the medical community, a physician is not negligent in selecting one of the recognized methods, even if the method turns out to be a wrong selection, or one not favored by other physicians.  The court noted Butler's objection.

¶ 8    The jury returned a verdict in favor of Dr. Naylor.  Butler now appeals, contending she is entitled to a new trial because the court committed harmful error by (1) admitting the Zollinger text into evidence as an exhibit and providing it to the jury for use during deliberations; and (2) giving instruction thirty-eight to the jury over her objection.

**STANDARD OF REVIEW**

¶ 9    Rules of evidence are interpreted according to general rules of statutory construction.  *See State v. Robertson*, 932 P.2d 1219, 1228 (Utah 1997).  Where a rule's language is plain and unambiguous we will not look beyond the rule itself for meaning.  *See id.*  A trial court errs when it rules contrary to an evidentiary rule's plain meaning; however, an " ' "erroneous decision to admit or exclude evidence does not constitute reversible error unless the error is harmful." ' "  *Jones v. Cyprus Plateau Min. Corp.*, 944 P.2d 357, 360 (Utah 1997) (quoting *Jouflas v. Fox Television Stations, Inc.*, 927 P.2d 170, 173 (Utah 1996) (quoting *Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378 (Utah 1995))).  "Harmful error occurs where 'the likelihood of a different outcome in the absence of the error is "sufficiently high so as to undermine confidence in the verdict." ' "  *Id.* (quoting *Jouflas*, 927 P.2d at 174 (quoting *State v. Knight*, 734 P.2d 913, 920 (Utah 1987))).

¶ 10    A trial court's ruling concerning a jury instruction is reviewed for correctness.  *See Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 466 (Utah 1996).  A new trial will not be granted unless any error of the trial court was prejudicial, meaning that it misadvised or misled the jury on the law.  *See Vitale v. Belmont Springs*, 916 P.2d 359, 363 (Utah Ct.App.1996).

**ANALYSIS**

**I.  EVIDENCE**

¶ 11    Butler contends the trial court committed harmful error when, in violation of rule 803(18) of the Utah Rules of Evidence, it admitted into evidence as an exhibit a single page from the Zollinger medical text.  She asserts that the trial court further prejudiced her when it permitted the jury to use the exhibit during deliberations.  We review this issue to determine whether the trial court erred.  If it did, we must then determine whether the abuse constituted harmful error which would entitle Butler to a new trial.

¶ 12    Dr. Naylor testified that he performed the surgery on Butler according to the procedure described and recommended in the Zollinger text.  He stated that the procedure was intended to relax the anal canal and allow it to open normally.  He also stated that he did not cut any of the muscle tissue of Butler's external sphincter.

¶ 13    At one point during his testimony, he read a passage aloud from page 456 of the Zollinger text that described how the surgery was to be performed.  Following the reading, Dr. Naylor moved to have page 456 admitted into evidence as an exhibit.  Butler objected, stating lack of foundation.  Dr. Naylor then laid additional foundation and made a second motion to have the exhibit admitted.  Butler objected again, this time citing rule 803(18).  The court overruled the objection and allowed the page into evidence for illustrative purposes only.

¶ 14    Utah Rule of Evidence 803(18) creates an exception to the hearsay rule for learned treatises.  It states:

The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:

(18) To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

When rule 803(18) is construed according to its plain language, the trial court did err in admitting the Zollinger excerpt as an exhibit. *See Robertson*, 932 P.2d at 1228. The rule prohibits the admission of published treatises as exhibits. In reference to rule 803(18), Professor Weinstein states:

To insure that the jurors will not be unduly impressed by the treatise, and that they will not use the text as a starting point for conclusions untested by expert testimony, the last paragraph bars the admission of treatises as exhibits so that they cannot be taken into the jury room.

J. Weinstein & M. Berger, 4 *Weinstein's Evidence* ¶ 803(18)[02] (addressing Federal Rule of Evidence 803(18)). Thus, the trial court erred by allowing the page to be admitted into evidence as an exhibit and by allowing it to be taken to the jury room for deliberation.

■ ¶ 15 Having determined that the trial court erred, we must next determine whether the error was harmful. An error is harmful only where "the likelihood of a different outcome is sufficiently high that it undermines our confidence in the verdict." *Robertson*, 932 P.2d at 1227 (citing *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992)).

¶ 16 In the absence of the Zollinger text, the jury could have relied upon the testimony of several doctors in finding that Butler's problems with urgency and incontinence were unrelated to the surgery Dr. Naylor

had performed. The jury heard the testimony of Dr. McGreevy, who opined that the surgery was performed properly and complied with accepted medical techniques and the appropriate standard of care. Additionally, the jury heard the testimony of Dr. Martin Arena, a board certified internist, who examined Butler at least five times following the surgery. Dr. Arena stated that Butler did not make any claims of urgency or incontinence to him during those examinations. Furthermore, Drs. Kathleen Boynton and Stewart Ellington, both gastroenterologists, independently examined Butler and stated that they were unable to determine the cause of her incontinence but could not link the problems to the surgery. Dr. E. Douglas Slawson, a general surgeon, testified that his examination of Butler showed that the surgery had healed properly and that there was no relationship between it and Butler's incontinence. Drs. J. Preston Hughes and Robert Spencer, both board certified colorectal surgeons, independently examined Butler. Each found that she had normal sphincter tone and assigned her problems with incontinence to anal problems which were unrelated to the surgery.[1] Dr. John Leigh, a board certified general surgeon, who performed anoplasty surgery on Butler to extend the length of her anal canal in hopes of relieving her incontinence, opined that neither the length of Butler's anal canal nor her incontinence was related to surgery performed by Dr. Naylor.

¶ 17 Butler, on the other hand, presented evidence that the external sphincter should not have been divided or severed. Her expert, Dr. Stephen Wilson, testified that it was substandard to divide the external sphincter. Drs. Hughes, Slawson, and Leigh testified that they do not intentionally divide the external sphincter. However, none of these doctors testified that Dr. Naylor had divided or severed Butler's external anal sphincter during surgery. Moreover, not even Butler's expert witness, Dr. Wilson, testified that the surgical procedure Dr. Naylor had performed (making a one- by three millimeter

---

1. Dr. Hughes believed Butler's incontinence and urgency resulted from spastic bowel or irritable bowel syndrome. Dr. Spencer speculated that

Butler's problems may have stemmed from a slightly shorter than normal anal canal.

incision to relax anal scar tissue) was medically improper.

¶ 18 Given the weight of this evidence in favor of Dr. Naylor, we conclude that the trial court's error did not create a sufficiently high likelihood that the outcome would have been different had the error not been committed.

## II. JURY INSTRUCTIONS

¶ 19 Butler next contends that the trial court committed harmful error by giving jury instruction thirty-eight concerning alternative treatment methods. The instruction states:

> When there is more than one method of diagnosis or treatment which is recognized by a respectable portion of the medical community, and no one of the methods is used exclusively and uniformly by all practitioners in good standing, it is not negligence for a physician, in exercising that physician's best judgment, to select one of the approved methods, even if it later turns out to be a wrong selection, or one not favored by certain other practitioners.

She argues that the evidence failed to establish that the method of surgery performed by Dr. Naylor is recognized by a respectable portion of the medical community and he was therefore not entitled to the jury instruction.

¶ 20 We find that there was evidence presented at trial which establishes that the surgical procedure used by Dr. Naylor is recognized by a respectable portion of the medical community. However, we need not address this issue further because jury instruction thirty-eight presents only one of several theories upon which the jury could have relied in finding for Dr. Naylor.

¶ 21 When a civil case is submitted to a jury on several alternative theories and the jury does not identify which theory or theories it relied on in reaching its verdict, we may affirm the verdict if the jury could have properly found for the prevailing party on any one of the theories presented.

*Billings,* 918 P.2d at 467 (citing *Cambelt Int'l Corp. v. Dalton,* 745 P.2d 1239, 1241–42 (Utah 1987)). In the present case, there are other theories stated in jury instructions on which the jury could have based the no-cause verdict, including a finding that Dr. Naylor did not breach the standard of care (jury instruction 20); that the surgery was not negligently performed (jury instruction 23); and that the surgery was not the cause of Butler's alleged bowel problems (jury instruction 24). Therefore, even if the trial court had erred by giving instruction thirty-eight, the error would be harmless as the jury could have reached the no-cause verdict on several alternative theories. *Id.*

## CONCLUSION

¶ 22 We conclude that the trial court did err by admitting the page from the Zollinger text into evidence as an exhibit and allowing it to go to the jury room during deliberations. However, in light of the evidence admitted in favor of Dr. Naylor, we conclude that the error was harmless. Additionally, the trial court did not err in giving jury instruction thirty-eight. The judgment of the trial court is affirmed.

¶ 23 Associate Chief Justice DURHAM, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Chief Justice HOWE's opinion.

