2004 UT App 35

Leon E. PAULOS, an individual; and Leon E. Paulos, as personal representative and surviving spouse of Sally Paulos, deceased, Plaintiffs and Appellants,

v.

COVENANT TRANSPORT, INC., a Nevada corporation, Defendant and Appellee.

No. 20020807–CA.

Court of Appeals of Utah.

Feb. 20, 2004.

Robert S. Campbell, John A. Snow, and Mary E. Westby, Van Cott Bagley Cornwall & McCarthy, Salt Lake City, for Appellants.

Lynn S. Davies and H. Dennis Piercey, Salt Lake City, for Appellee.

Before BENCH, Associate P.J., DAVIS and JACKSON, JJ.

## OPINION

BENCH, Associate Presiding Judge:

¶ 1 This is an appeal from a jury verdict finding Covenant Transport (Covenant) not negligent after a trial for personal injuries and wrongful death resulting from a motor vehicle accident. We affirm.

## BACKGROUND [1]

¶ 2 On July 24, 1999, Dr. Leon Paulos (Paulos) and his wife, Sally, were traveling north along state road sixteen (S.R.16) on Paulos's motorcycle. They had just passed through Randolph, Utah and were following a dark-colored, unidentified car. Dr. Roy Traywick and Natalie Higginson, Sally's daughter, followed behind the motorcycle in another car. Some three miles north of the Paulos party, Scott Travis (Travis) drove a Covenant semi-truck in the opposite direction. Cooper Strength and Nicole Strength were passengers in the semi, training to be truck drivers. Cooper was in the passenger side of the semi's cab and Nicole was in the semi's sleeper. Traveling behind the semi was a Toyota 4–Runner SUV (the Mucha vehicle), driven by eighteen-year-old Marianne Mucha (Mucha).

¶ 3 S.R. 16 is a rural, two-lane road approximately twenty-six feet wide. Upon reaching a flat area of S.R. 16, about one-half mile north of the point of the accident, the Mucha vehicle began to overtake the Covenant semi. Mucha entered the northbound lane of traffic to see if it was clear to pass. She saw a "speck of a car on the horizon" traveling north. Mucha asked the passengers in the car, "do you think we can make it?" and received no response. Mucha then commenced her pass of the Covenant semi. There is conflicting evidence as to how quickly and how far the Mucha vehicle progressed in the pass before the accident occurred. There is also conflicting evidence as to how long the Mucha vehicle remained in the northbound lane, but it did remain there, neither completing the pass nor resuming its position behind the Covenant semi.

¶ 4 In the meantime, the dark-colored, unidentified car approached in the northbound lane. The unidentified car swerved to the right around the Mucha vehicle. Then, for the first time, Mucha saw the Paulos motorcycle. Mucha attempted to leave the road by moving to her left. Paulos hit the brakes on his motorcycle and veered to his right, but Mucha was blocking that path. Paulos then attempted to go left, but it was too late. The Mucha vehicle struck Paulos and Sally with its right front corner, propelling both of them into the air. A Life Flight helicopter transported them to Salt Lake City where Sally died shortly thereafter and Paulos remained

---

1. " 'On appeal from a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to that verdict.' " *Kilpatrick v. Wiley, Rein & Fielding,* 2001 UT 107,¶ 2, 37 P.3d 1130 (quoting *Pratt v. Prodata, Inc.,* 885 P.2d 786, 787 (Utah 1994)).

in intensive care for the severe injuries he sustained.

¶ 5 Paulos subsequently filed a complaint against Covenant, Mucha, and the owners of the Mucha vehicle—Richard and Sylvia Mucha—for negligence causing his injuries and the death of Sally. One year later, Paulos entered into a settlement agreement with the Muchas on behalf of Sally's estate and himself, reserving his right to pursue claims against Covenant.

¶ 6 The case went to trial against Covenant. At the end of trial, the jury answered question one on the special verdict form, finding that Covenant was not negligent. In accordance with instructions, the jury did not reach the other questions on the verdict form relating to proximate cause, comparative negligence, contributory negligence, and damages. Paulos's motions for judgment notwithstanding the verdict and new trial were denied by the trial court. Paulos appealed to the Utah Supreme Court, which then transferred the appeal to this court pursuant to Utah Code Annotated section § 78-2-2(4) (2002).

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Paulos claims that the trial court committed reversible error in several ways. Each issue by itself, Paulos submits, constitutes reversible error; additionally, the multiple errors, taken together, constitute cumulative error requiring reversal. *See Whitehead v. American Motors Sales Corp.,* 801 P.2d 920, 928 (Utah 1990) (finding the cumulative effect of several errors undermined the court's confidence that a fair trial was had).

¶ 8 First, Paulos asserts that the trial court should have admitted the American Trucking Association's Safety Guidelines Handbook into evidence as an exhibit and allowed the jury to use it in its deliberations. " 'The admissibility of an item of evidence is a legal question.' " *Gorostieta v. Parkinson,* 2000 UT 99,¶ 14, 17 P.3d 1110 (citation omitted). "However, the trial court has a great deal of discretion in determining whether to admit or exclude evidence, and its ruling will

not be overturned unless there is an abuse of discretion." *Id.*

¶ 9 Second, Paulos maintains that the trial court erred by allowing Cooper Strength to provide an elapsed time estimate of the accident. "In reviewing questions of admissibility of evidence at trial, deference is given to the trial court's advantageous position." *Whitehead,* 801 P.2d at 923.

¶ 10 Next, Paulos contends that the trial court inappropriately instructed the jury. "A trial court's ruling concerning a jury instruction is reviewed for correctness." *Butler v. Naylor,* 1999 UT 85,¶ 10, 987 P.2d 41. However, "[a] new trial will not be granted unless any error of the trial court was prejudicial, meaning that it misadvised or misled the jury on the law." *Id.* Jury instructions are examined in their entirety, thus we " 'will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case.' " *Brewer v. Denver & Rio Grande W. R.R.,* 2001 UT 77,¶ 38, 31 P.3d 557. Moreover, "to assert that the trial court erred in either giving or failing to give an instruction, a party must first submit correct instructions and then, should the court fail to give them, timely except." *Newsom v. Gold Cross Serv., Inc.,* 779 P.2d 692, 694 (Utah Ct.App.1989). Paulos also argues that the caption on the special verdict form was inaccurate. " 'We have held repeatedly that on appeal, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error.' " *Cheves v. Williams,* 1999 UT 86,¶ 20, 993 P.2d 191 (citation omitted).

¶ 11 Finally, Paulos reasons that the trial court prejudicially erred by submitting the issue of Paulos's contributory negligence to the jury because there was no evidence of contributory negligence. "All parties are entitled to have their theories of the case submitted to the jury in the court's instructions, provided there is competent evidence to support them." *Newsom,* 779 P.2d at 694.

## ANALYSIS

### I. The American Trucking Association Handbook

¶ 12 A substantial issue at trial was the standard of care required of Covenant's

driver, Travis. Paulos's expert testified that Travis should have reduced his speed and moved to the right as far as possible to assist Mucha in completing the pass. In support of that position, Paulos offered a truck driver's handbook from the American Trucking Association (the ATA handbook). Both sides acknowledged that the ATA handbook set forth an accepted standard of care as to what a semi-truck driver should do when being overtaken. Paulos argued that the ATA handbook was not a learned treatise, but rather was admissible as a safety manual containing the standard of conduct for semi-truck drivers. Covenant objected to its admissibility on the basis of relevancy, and alternatively urged that the ATA handbook should be treated as a learned treatise pursuant to rule 803(18) of the Utah Rules of Evidence. The trial court overruled Covenant's relevancy objection, but agreed that the information from the handbook was admissible under rule 803(18). Therefore, the court allowed Paulos's expert to read from the ATA handbook, as well as to display the relevant portions to the jury. Because it was admitted under rule 803(18), the court did not receive the ATA handbook as an exhibit to be used by the jury in its deliberations.

¶ 13 Utah Rule of Evidence 803(18) contains the hearsay exception for learned treatises:

The following are not excluded by the hearsay rule . . . :

. . . .

(18) *Learned treatises.* To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness

or by other expert testimony or by judicial notice. *If admitted, the statements may be read into evidence but may not be received as exhibits.*

Utah R. Evid. 803(18) (emphasis added).

■ ¶ 14 As explained by the Utah Supreme Court in *Butler v. Naylor*, 1999 UT 85, 987 P.2d 41, "[t]he rule prohibits the admission of published treatises as exhibits." *Id.* at ¶ 14. Paulos relies on *Butler* for the proposition that the ATA handbook is not a learned treatise because it is not "on a subject of history, medicine, or other science or art." Utah R. Evid. 803(18). Covenant relies on *Butler* for the proposition that, as a learned treatise, the ATA handbook "may not be received as [an] exhibit[ ]." *Id.*

¶ 15 *Butler* cites rule 803(18), which arguably limits its application to subjects of "history, medicine, or other science or art." Utah R. Evid. 803(18). The rule, however, can be interpreted to include the ATA handbook. Because this rule is identical to the federal rule, federal cases are instructive. *See LeVanger v. Highland Estates Props. Owners Ass'n*, 2003 UT App 377, ¶ 17, 80 P.3d 569. In *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 609 F.2d 820 (5th Cir.1980), the court applied the federal learned treatise exception to a number of safety publications. "We have held that safety codes and standards are admissible when they are prepared by organizations formed for the chief purpose of promoting safety because they are inherently trustworthy and because of the expense and difficulty involved in assembling at trial those who have compiled such codes." *Id.* at 822; *see also Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221, 1229 (5th Cir.1984) ("[S]afety codes have traditionally been treated as coming within the learned treatise exception provided by Rule 803(18).").[2] In *Johnson,* the trial court re-

---

**2.** In both *Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221 (5th Cir.1984), and *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 609 F.2d 820 (5th Cir.1980), the Fifth Circuit recognized that, in addition to admission under the learned treatise exception, safety codes may also be admitted under the residual exception to hearsay—rule 803(24) of the Federal Rules of Evidence. In *Johnson,* the safety code was not admissible under 803(24) because the proponent

of the safety code had not given the "advance notice" required by 803(24). *Johnson,* 609 F.2d at 823. In *Alexander,* the proponent of the safety code did not urge its admission under 803(24) at trial, and "no substantial right . . . was affected by the failure to admit the Code as an exhibit because the relevant sections had already been read and shown to the jury." *Alexander,* 731 F.2d at 1229. Utah's residual hearsay exception is also numbered 803(24). *See* Utah R. Evid.

fused to allow a number of safety codes and handbooks into evidence because it was relying on state case law from Mississippi, rather than federal law. The state case on point, *Catholic Diocese v. Jaquith*, 224 So.2d 216 (Miss.1969), "held that governmental safety codes and regulations [were] admissible in evidence only when they have been given compulsory force by the state legislature, and that only treatises dealing with the 'exact sciences' may be admitted." *Johnson*, 609 F.2d at 822. The *Johnson* court, however, applied federal law and held that the information from the publications was covered by rule 803(18). *Id.* at 823.[3]

¶ 16 Although no Utah case explicitly extends rule 803(18) to include nongovernmental safety codes or nonscientific safety codes, the ATA handbook is of the same nature as the other materials explicitly mentioned in the learned treatise exception. We therefore believe that the ATA handbook was properly admitted under the learned treatise exception. Pursuant to the dictates of *Butler*, the trial court properly proscribed its admission as an exhibit and correctly kept it from jury deliberations. *See Butler*, 1999 UT 85 at ¶ 14, 987 P.2d 41 ("the trial court erred by allowing the page to be admitted into evidence as an exhibit and by allowing it to be taken to the jury room for deliberation").

■ ¶ 17 Moreover, any error in admitting the ATA handbook under the learned treatise exception was harmless. Paulos submitted that the ATA handbook was admissible as nonhearsay because it provided a standard of care. "There is no doubt that in some jurisdictions safety codes have been excluded as hearsay.... But in others they have been admitted after proper identification by a

qualified witness for the purpose alluded to above, i.e., as some evidence of the proper standard of care but not as absolute evidence of such standard." *McComish v. DeSoi*, 42 N.J. 274, 200 A.2d 116, 121 (1964). Paulos relies on *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975), in support of his argument that "[e]vidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence." *Id.* at 1180.[4] Paulos also cites *McComish*, a case mentioned by the *Muncie* court, to bolster his contention that the ATA handbook should have been admitted as an exhibit and given to the jury. However, *McComish* itself is a clear example of why any error in this instance is harmless:

> Criticism has been leveled in this case not only against the competency of the codes but against the introduction of the documents as well. *This secondary problem is one which must be left largely to the discretion of the trial court.* Whether the entire code or just the pertinent portion should go to the jury (removed from the document, or copied or photostated), *or whether the pertinent portion should simply be read to the jury, must remain in his hands,* and an appellate tribunal will not interfere unless abuse of discretion is manifest.

*McComish*, 200 A.2d at 122 (emphasis added). In the instant case, the trial court exercised its discretion in allowing the pertinent portion of the ATA handbook to be read to the jury, rather than admitting it as an exhibit. The pertinent portion was not only read into evidence and explained by an ex-

---

803(24). Paulos neither complied with the advance notice requirement of the rule nor submitted the ATA handbook under this exception. Further, as in *Alexander*, "the relevant sections ... [were] read and shown to the jury." *Alexander*, 731 F.2d at 1229.

**3.** In *Finchum v. Ford Motor Co.*, 57 F.3d 526 (7th Cir.1995), the Seventh Circuit held that "[u]nder Rule 803(18), statements contained in a published periodical which are relied upon by an expert witness may be admitted, but they must be read into evidence rather than received as exhibits." *Id.* at 532. Comparable to the ATA handbook in the instant case, the publication at issue in *Finc-*

*hum* was an article entitled " 'Occupant Protection in Rear Impacts.' " *Id.* at 531.

**4.** Contrary to Paulos's statement that "[t]he Fifth Circuit did not view advisory circulars in *Muncie Aviation [Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975),] as hearsay," the court in *Muncie* never decided whether the circulars were hearsay. Instead, the court found that "the characterization of the evidence as hearsay or nonhearsay is not dispositive to the outcome of the case, for the court finds that the evidence was sufficiently trustworthy to be admissible." *Muncie*, 519 F.2d at 1182 n. 6.

pert witness, but also displayed to the jury in the form of a poster. Thus, any error in admitting the ATA handbook under rule 803(18) was harmless.

## II. Cooper Strength's Elapsed Time Estimate

¶ 18 Paulos asserts that the trial court erred by allowing Cooper Strength (Strength) to estimate the amount of time that elapsed between the time the Mucha vehicle attempted to pass the Covenant semi and the point of the accident. Counsel for Covenant told Strength to visualize the event, raise his hand when the Mucha vehicle began to make its pass, and give another signal at the time when the collision would have occurred. The time that elapsed between Strength's hand signals was then measured to be approximately five seconds. Paulos characterizes this as a staged demonstration and claims that, as such, Covenant was required to recreate the actual event with substantial similarity. We disagree with Paulos's characterization that Strength's elapsed time estimate was a staged demonstration of the actual event.

¶ 19 A staged demonstration is the "deliberate recreation of an event under staged conditions." *Fusco v. General Motors Corp.*, 11 F.3d 259, 263 (1st Cir.1993). Where staged demonstrations seem to resemble the actual occurrence of the event depicted, courts fear that "jurors may be misled because they do not fully appreciate how variations in the surrounding conditions, as between the original occurrence and the staged event, can alter the outcome." *Id.* at 264. "In such cases the solution of many courts ... has been to call for substantial similarity in conditions, or to stress the great discretion of the trial judge to exclude the evidence where similarity is not shown, or both." *Id.* Paulos claims that the trial court erred when it refused to do just that—either require substantial similarity in conditions, or exclude Strength's elapsed time estimate.

¶ 20 At trial, Strength gave arguably contradictory responses when asked to recall how much time elapsed between the inception of the Mucha pass and the accident. In his first response, he said, "It was like a

flash. It was an instant. I mean, it was quick. It wasn't a lot of time." When he gave his second response, he explained that it was "not even a minute. I would say less, 30 seconds, 45 seconds. It wasn't very long." These responses warranted clarification of the issue and it was perfectly within the trial court's discretion to allow Strength to explain, in a way meaningful to the jury, his inconsistent statements. *See Perkins v. Fit-Well Artificial Limb Co.*, 30 Utah 2d 151, 514 P.2d 811, 813 (1973) ("The trial judge is allowed a wide discretion in his control over the examination of witnesses—lay and expert alike. Unless he abuses that discretion and prevents the witness from answering a proper question on a material matter, he should not be reversed.").

¶ 21 Here, substantial similarity of conditions was not required because Strength's estimate did not purport to demonstrate the actual occurrence of the event depicted. He was simply asked to visualize the occurrence of the event in his mind and attach an amount of time to that event. "The issue for us is whether the demonstration is sufficiently close in appearance to the original accident to create the risk of misunderstanding by the jury, for it is that risk that gives rise to the special requirement to show similar conditions." *Fusco*, 11 F.3d at 264. Strength's personal visualization of the accident while sitting on the witness stand was hardly "sufficiently close in appearance to the original accident" to "give[ ] rise to the special requirement to show similar conditions." *Id.*

## III. Jury Instructions

¶ 22 Paulos claims the trial court committed reversible error in giving instruction number sixteen, which advised the jury of the settlement that was reached between Paulos and the Muchas, because it was a comment on the evidence as well as an incorrect statement of fact and law. Paulos objects to the following language from instruction sixteen:

You may, however, consider the settlement agreement when you weigh the believability of the testimony presented. Since the plaintiff and the Muchas have settled, they are no longer adversary parties in this

lawsuit. The plaintiff now has a financial interest in showing that Covenant Transport is entirely to blame for the accident. Also, the Muchas now have no reason to dispute the amount of damages the plaintiff claims.

¶ 23 In *Slusher v. Ospital*, 777 P.2d 437 (Utah 1989), the Utah Supreme Court held that, where a settlement agreement is entered into by an injured plaintiff and one or more, but not all, defendants, "the parties must promptly inform the court and the other parties to the action of the existence of the agreement and of its terms." *Id.* at 444. Additionally, *Slusher* held that

> [w]here the action is tried by a jury, the court shall, upon motion of a party, disclose the existence and basic content of the agreement to the jury *unless* the court finds that, on facts particular to the case, such disclosure will create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

*Id.* Instruction sixteen did precisely what *Slusher* commands. At trial, Paulos claimed that the instruction was erroneous because it did not advise the jury against considering any aspect of the settlement in arriving at its determination of liability. However, the second paragraph of instruction sixteen, unmentioned by Paulos, gives that very limitation:

> By settling with the plaintiff, the Muchas did not admit any fault. You must still determine from the evidence which party or parties were negligent, if any, and the percentage of negligence that each contributed in causing the accident. In making that determination of fault, you must not consider the settlement agreement as either an admission of fault (or lack of fault) by the Muchas. Nor should you consider the settlement agreement as an indication of the Muchas' willingness to deal responsibly with the plaintiff.

¶ 24 As for Paulos's contention that the last paragraph of instruction sixteen was a comment on the evidence, *Slusher* held that "the jury should be informed of the changed financial interest of the parties concerned and the realigned positions of the litigants." *Id.* Instruction sixteen did that: "Since the plaintiff and the Muchas have settled, they are no longer adversary parties in this lawsuit. The plaintiff now has a financial interest in showing that Covenant Transport is entirely to blame for the accident. Also, the Muchas now have no reason to dispute the amount of damages the plaintiff claims." Further, footnote nine of *Slusher* cautioned that the instruction needs to "emphasize that the settlement and resulting change in the adversarial alignment of the parties could be considered only in evaluating the credibility of testimony and not on the question of liability." *Slusher*, 777 P.2d at 442 n. 9. The remaining sentence in the paragraph Paulos objected to, did just that. After cautioning that the settlement could not be considered in the determination of liability, instruction sixteen states: "You may, however, consider the settlement agreement when you weigh the believability of the testimony presented."

¶ 25 Additionally, before a party can "assert that the trial court erred in either giving or failing to give an instruction, *a party must first submit correct instructions* and then, should the court fail to give them, timely except." *Newsom v. Gold Cross Serv., Inc.*, 779 P.2d 692, 694 (Utah Ct.App.1989) (emphasis added). Paulos did not submit an alternative *Slusher* instruction and, therefore, cannot now assert that the trial court erred.

¶ 26 Paulos also takes exception to instruction twenty-two. Instruction twenty-two advised the jury that "[a] violation of a safety law is evidence of negligence." The instruction then listed three exceptions to that rule:

> (1) When obeying the law would have created an even greater risk of harm.
>
> (2) When the person who violated the law was faced with an emergency that person did not create, and, by reason of the emergency, that person could not obey the law.
>
> (3) When the person who violated the law made a reasonable effort to obey the law, but was unable to do so.

¶ 27 It is important to note that the jury probably did not even reach the exceptions, given the dispute over whether Covenant violated a safety law. However, even if the jury did conclude that Covenant had violated a safety law, there is ample evidence to support submission of the exceptions to the jury.

The extensive evidence left the jury with many ways that it could view how the accident occurred. *See Newsom*, 779 P.2d at 694 ("All parties are entitled to have their theories of the case submitted to the jury in the court's instructions, provided there is competent evidence to support them.").

¶ 28 We will not address Paulos's objection to instruction twenty-three because Paulos has not preserved this issue for appeal. In fact, far from preserving his objection to this instruction, Paulos actually requested that this instruction be given to the jury. Paulos also argues that the trial court erred in giving both instructions twenty-three and twenty-six because they were duplicative and unfairly emphasized a standard of conduct Covenant was entitled to expect. Once again, however, Paulos requested that instruction twenty-six, in addition to instruction twenty-three, be given to the jury.

### IV. Special Verdict Form Caption

 ¶ 29 As with instructions twenty-three and twenty-six, Paulos did not preserve this issue for appeal. When the court addressed the special verdict form caption with the parties, the court noted that the purpose of the caption was to "capture the heading as set forth in the complaint." After some dialogue, counsel for Paulos agreed that the complaint was the dispositive document. The complaint, obviously submitted by Paulos, contains the Muchas in the caption; thus, it was proper for the verdict to also contain the Muchas.

¶ 30 Paulos admits that he did not preserve his objections to instructions twenty-three, twenty-six, and the verdict form caption; however, he insists that the trial court plainly erred in using the instructions and caption he offered. Where Paulos submitted the instructions and invited the error (if an error does exist), the doctrine of plain error cannot be relied upon. *See State v. Perdue*, 813 P.2d 1201, 1206 (Utah Ct.App.1991). "The doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal." *Miller v. Martineau & Co., Certified Pub. Accountants*, 1999 UT App 216, ¶ 42, 983 P.2d 1107 (quotations and citations omitted). We

therefore decline to address this argument further. *See id.*

### V. Evidence of Paulos's Contributory Negligence

¶ 31 Finally, Paulos contends that the question of Paulos's contributory negligence should not have been submitted to the jury. This contention is without merit. The question of contributory negligence was properly submitted to the jury, based on the evidence that Paulos followed the vehicle ahead of him too closely. Paulos's own expert testified that, with more time, Paulos could have avoided the accident. In any event, given the verdict that Covenant was not negligent, the jury did not even reach the question of Paulos's fault.

### VI. Cumulative Error

¶ 32 "Although [Paulos] asserts that a number of errors were committed at trial, we find none, and therefore there is no cumulative error." *State v. Medina–Juarez*, 2001 UT 79, ¶ 27, 34 P.3d 187.

### CONCLUSION

¶ 33 For the foregoing reasons, we affirm the jury's verdict in favor of Covenant.

¶ 34 WE CONCUR: JAMES Z. DAVIS and NORMAN H. JACKSON, Judges.