2009 UT App 306

**Douglas Patrick DOYLE, Petitioner and Appellant,**

v.

**Robin Elaine DOYLE, Respondent and Appellee.**

No. 20080618–CA.

Court of Appeals of Utah.

Oct. 29, 2009.

Steve S. Christensen, Matt Anderson, and Benjamin Lusty, Salt Lake City, for Appellant.

Suzanne Marelius, Salt Lake City, for Appellee.

Before Judges GREENWOOD, THORNE, and McHUGH.

## OPINION

GREENWOOD, Presiding Judge:

¶1 Douglas Patrick Doyle (Father) appeals the trial court's order granting Robin Elaine Doyle's (Mother) motion to modify custody of their son (Son), arguing that the court made a fatal procedural error, incorrectly found a substantial and material change in circumstances had occurred, and

erred in determining that Mother's custody of Son would be in Son's best interest. *See* Utah Code Ann. § 30-3-10.4 (2007). In addition, Father argues that even if the trial court correctly modified custody, it erred in modifying child support because Mother had neither requested nor was she entitled to such a modification. We affirm in part and reverse and remand in part for entry of a proper child support order.

## BACKGROUND

¶ 2 Father and Mother were divorced by a decree entered in February 2005. Father, then residing in Salt Lake City, Utah, was granted sole legal and physical custody of Son.[1] The decree also afforded Mother, then residing in Denver, Colorado, the following opportunity: "In the event [Mother] relocates to the Salt Lake Valley, the parties will have joint legal and physical custody and shall share time equally in alternating weeks and on holidays, as per standard schedule" (the joint custody provision). Less than three months later, in early May 2005, Mother moved back to the Salt Lake Valley in order to activate the automatic joint custody provision. Shortly thereafter, Father filed a Motion for Relief From Judgment pursuant to rule 60(b) of the Utah Rules of Civil Procedure, arguing that the joint custody provision impermissibly allowed custody to be prospectively changed based upon a future triggering event. *See* Utah R. Civ. P. 60(b)(6) (allowing courts to relieve parties from orders based on any reason justifying the requested relief, other than the reasons contained elsewhere in rule 60(b)). The trial court granted Father's motion, stating that the "change of custody requires notice and a hearing and cannot occur automatically upon a specified event." The trial court's order also maintained Father's custody of Son and amended the original Divorce Decree, Conclusions of Law[,] and Findings of Fact to reflect the order.[2] Mother did not appeal this order.

¶ 3 Mother then petitioned to modify the custody award, asserting that there had been a substantial and material change in circumstances because (1) she now resided in the Salt Lake Valley, in the same neighborhood as Father and Son; (2) she had relocated in reliance on the now-invalidated joint custody provision, the absence of which makes custody uncertain; and (3) Son's best interests require stability in his custodial arrangement, including a stable relationship with Mother. In response, Father filed a motion to bifurcate the custody modification hearing into two separate hearings: one to address whether a substantial and material change in circumstances had occurred and, if so, a second hearing to determine whether, based on the changed circumstances, custody modification was in Son's best interests. The trial court granted Father's unopposed motion to bifurcate "[t]o the extent that [Father]'s [motion] merely reaffirms the [statutory] requirement" that the court first determine whether there has been a substantial and material change in circumstances before reaching the best interests determination. The trial court further clarified that it did not agree with Father "if [his] intent is to have the Court hold separate trials on the bifurcated issues." The trial court accordingly informed the parties that "the material change issue [will be] presented first, but the parties should be prepared to immediately proceed to presentation of the substantive case if the court determines the threshold issue has been satisfied."

¶ 4 At trial on Mother's petition to modify custody, the court received testimony from several witnesses, including Dr. Valerie Hale—the court-appointed custody evaluator—and various officials from Son's school. At the beginning of the second trial day, the court made a "preliminary" finding that substantial and material changes had occurred since entry of the Divorce Decree but reserved making a final determination on the issue until the remainder of the evidence had been presented and Father had been afford-

---

1. Son requires special services due to physical and learning disabilities, some of which stem from a degenerative nerve disorder.

2. Father's rule 60(b) motion was considered by a different judge than the judge who entered the divorce decree. A third judge, Judge Denise P. Lindberg, presided over Mother's petition to modify.

ed a full opportunity to rebut Mother's evidence. The trial court ultimately affirmed this preliminary finding, stating that the striking of the joint custody provision, among other factors, constituted a substantial and material change in circumstances not contemplated in the Divorce Decree. The trial court then made a best interests determination, concluding that, consistent with Dr. Hale's testimony and the recommendations of Dr. Hale and the Guardian Ad Litem (GAL), Mother's custody of Son was in Son's best interest. The trial court thus granted Mother's petition to modify custody and granted Mother sole legal and physical custody of Son.

¶ 5 The trial court also addressed the issue of child support after requesting and receiving supplemental briefing on that issue. According to the Divorce Decree, the social security disability benefits to which Son is entitled (the SSDI benefits) were credited against the child support obligations of both parents.[3] Otherwise, the Divorce Decree did not address child support. Mother argued that the original child support provision was not legally correct because the SSDI benefits should only have been credited toward her support obligation, not toward Father's, because they were based on her disability. In addition, Mother argued that child support modification was necessary due to the recent custody modification. Father, on the other hand, argued that crediting the SSDI benefits to both parents was not error because it was not specifically prohibited by either statutory or case law, and that Mother is not entitled to support modification because she failed to request it in her petition to modify. The trial court agreed with Mother, determining that the original decree improperly credited the SSDI benefits against Father's support obligation, and that, although Mother did not explicitly request support modification in her petition, she was entitled to child support because it necessarily flowed from the custody modification. See id. R. 54(c)(1) (providing that, with exceptions not applicable to the present case, "every final judgment shall grant the relief to which the party in whose favor it is rendered is enti-

tled, even if the party has not demanded such relief in his pleadings"). Child support was modified according to calculations Mother submitted, based on the table contained in subsection (2) of Utah Code section 78B–12–301. See Utah Code Ann. § 78B–12–301(2) (2008). Father now appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 6 Father first argues that the trial court's failure to "completely" bifurcate the change in circumstances issue from the best interests issue constitutes reversible error. Whether the trial court was required to hold separate hearings on these two issues involves the interpretation of Utah case law. "Pure questions of law . . . are reviewed for correctness." *Huish v. Munro*, 2008 UT App 283, ¶ 19, 191 P.3d 1242.

■ ¶ 7 Father next argues that the trial court erred in determining that there had been a substantial and material change in circumstances sufficient to justify custody modification. " 'The determination of the trial court that there [has or has not] been a substantial change of circumstances . . . is presumed valid, and we review the ruling under an abuse of discretion standard.' " *Young v. Young*, 2009 UT App 3, ¶ 4, 201 P.3d 301 (quoting *Bolliger v. Bolliger*, 2000 UT App 47, ¶ 10, 997 P.2d 903 (alterations in original)).

■ ¶ 8 Father also argues that the trial court incorrectly concluded that Son's best interests would be served by modifying custody to grant Mother sole legal and physical custody, subject to Father's exercise of liberal parent time. "It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief." *Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998).

■ ¶ 9 Finally, Father argues that, in the event the trial court's custody modification is upheld, the trial court erred in modifying child support because Mother did not request, nor was she entitled to, such relief. We review the trial court's legal determinations regarding Mother's entitlement to child

---

3. The SSDI benefits to which Son is entitled    stem entirely from Mother's disability.

support modification for correctness. *See Wall v. Wall,* 2007 UT App 61, ¶ 7, 157 P.3d 341, *cert. denied,* 168 P.3d 819 (Utah 2007). As for the amount of the modified child support, "[w]e will not upset the trial court's apportionment of financial responsibilities in the absence of manifest injustice or inequity that indicates a clear abuse of discretion." *Maughan v. Maughan,* 770 P.2d 156, 161 (Utah Ct.App.1989).

## ANALYSIS

### I. Custody Modification

¶ 10 Father's appeal alleges various procedural and legal errors committed by the trial court during the custody modification proceedings. In particular, Father challenges the trial court's decision not to completely bifurcate hearings regarding the issues of changed circumstances and best interests, arguing that the trial court improperly allowed best interests evidence to be presented prior to a determination of changed circumstances. Father contends that he was prejudiced as a result of this procedural error. Relatedly, Father argues that the trial court erred in concluding that a substantial and material change in circumstances had indeed occurred. Finally, Father claims that the trial court erred in determining that Son's interests would best be served with Mother as his primary custodian. We address each of these issues separately below.

### A. Complete Bifurcation

■ ¶ 11 Father reiterates on appeal an argument he espoused before the trial court; namely, that Utah case law requires *complete* separation of the changed circumstances and best interests determinations, effectively preventing a party seeking custody modification from presenting any evidence relevant to best interests until it has been judicially determined that a legally sufficient change in circumstances has taken place. In other words, Father asks us to presume prejudice where the changed circumstances and best interests issues are not decided in completely separate hearings and evidence on both issues is not strictly segregated.

■ ¶ 12 We agree with Father that Utah case law requires a determination that circumstances have materially and substantially changed before proceeding to a determination of which parenting arrangement is in the child's best interests. *See Hogge v. Hogge,* 649 P.2d 51, 53 (Utah 1982) (establishing two-prong analytical framework for custody modification); *see also Becker v. Becker,* 694 P.2d 608, 610 (Utah 1984) (applying *Hogge* and emphasizing that changes must be material, i.e., "the kind of circumstances on which an earlier custody decision was based"). However, we, like the trial court, disagree with Father that evidence or testimony relevant to both a material change in circumstances and the child's best interests must somehow be presented separately.

■ ¶ 13 Although the analytical framework requiring bifurcation of these determinations is clear, "[t]his framework says nothing ... about how a trial court must receive evidence." *Huish v. Munro,* 2008 UT App 283, ¶ 17, 191 P.3d 1242. Cases decided subsequent to the establishment of this framework have recognized that trial courts have discretion to "deci[de] to merge the best interests of the child into the changed circumstances test ... [,] particularly ... when 'the initial custody award is premised on a temporary condition, a choice between marginal custody arrangements, ... or similar exceptional criteria.'" *Walton v. Walton,* 814 P.2d 619, 621 (Utah Ct.App.1991) (quoting *Maughan,* 770 P.2d at 160). Moreover, in the present case, as is quite frequently the situation, "the evidence supporting changed circumstances is ... the same evidence that is used to establish the best interests of the child," *Moody v. Moody,* 715 P.2d 507, 511 (Utah 1985) (Daniels, Dist. J., concurring). And a trial court is granted "wide discretion in controlling the mode and order of the presentation of evidence," *Huish,* 2008 UT App 283, ¶ 18, 191 P.3d 1242 (citing Utah R. Evid. 611(a) and *Paulos v. Covenant Transp., Inc.,* 2004 UT App 35, ¶ 20, 86 P.3d 752), "provided it ke[eps] its analysis appropriately bifurcated," *id.* Stated more succinctly, "it is the bifurcation of the analysis—not the literal bifurcation of the proceedings—that matters." *Id.*

¶ 14 Much of the evidence presented at the modification proceeding addressed Mother's relocation to the Salt Lake Valley, Son's decreased sociability and his increasing behavioral and educational needs, Father's failure to make various parental adjustments contemplated in the Divorce Decree, and Father's inability and unwillingness to co-parent with Mother. We do not agree with Father that this evidence should have been presented in a separate hearing addressing sequentially the issues of change in circumstances and Son's best interests. In fact, the duplicative and overlapping nature of this evidence lends support to the trial court's decision to hear all the evidence together, so as to not waste resources of the court, the parties, or the witnesses. The trial court was also mindful of the unusual status of this case, resulting from the earlier striking of the joint custody provision after Mother's relocation in reliance thereon, Son's rapidly worsening disabilities, and the Divorce Decree's clear preference that Mother be a part of Son's life to the extent possible. Furthermore, Father has presented us with no evidence showing that the trial court conflated its analysis of the changed circumstances and best interests issues. Because the trial court bifurcated its analysis of these issues, and given the unusual circumstances of the case, the overlapping nature of the evidence presented, and the trial court's inherent discretion to control the presentation of evidence, we see no error in the trial court's failure to completely bifurcate the hearings. *See id.* ¶ 19.

B. Substantial and Material Change in Circumstances

¶ 15 Father also argues that the trial court erred in determining that a substantial and material change in circumstances had occurred. Mother categorizes this determination as factual in nature and argues that Father has failed to marshal the evidence required to properly challenge this factual finding. Father responds, clarifying that his challenge is not directed toward the trial court's factual findings but instead is aimed at whether the trial court's "findings of fact themselves are insufficient as a matter of law to support the legal conclusion that there has been a material and substantial change of circumstances." Because Father characterizes this determination as a legal one, he urges us to apply a correctness standard of review. However, Utah law makes clear that a determination of whether substantial and material changes have occurred is a fact-intensive legal determination that is presumed valid and is reviewed for abuse of discretion. *See Young v. Young*, 2009 UT App 3, ¶ 4, 201 P.3d 301. Also, in making such a determination, trial courts must be mindful of two guiding principles: (1) the inquiry must "ordinarily ... focus exclusively on the parenting ability of the custodial parent and the functioning of the established custodial relationship," *Kramer v. Kramer*, 738 P.2d 624, 626 (Utah 1987); and (2) the changed circumstances allegedly justifying the modification must be material, that is, they must "be the kind of circumstances on which [the] earlier custody decision was based," *Becker*, 694 P.2d at 610. Ultimately, the party seeking modification bears the burden of demonstrating a substantial change in circumstances. *See Walton*, 814 P.2d at 621.

¶ 16 In determining that a qualifying change in circumstances had occurred, the trial court made the following findings:

[T]he [original custody] decision was based on the fact that, at the time, [Mother] was residing and working in Colorado and [Son] was doing well in a stable and supportive environment under [Father's] care.

Relying on the [joint custody provision] of the Divorce Decree, ... [Mother] informed her employer she would not be renewing her teaching contract, and completed her relocation to Salt Lake (and to [Son's] neighborhood) within six to eight weeks following entry of the Decree.

The parties demonstrated their understanding of [the] Decree by the fact that they began implementing the [joint] custody provision[ ] of the Divorce Decree even as they sought to change it.

When [it was] determined that the *automatic* change [detailed in the joint] custody provision[ ] of the Divorce Decree violated Utah law, the parties were faced with

a new legal interpretation of the Decree that neither side could have foreseen at the time it was entered.

Additionally, [the original judge] clearly anticipated that [Father]'s parenting skills would continue to develop, and that he would adopt less harsh discipline methods toward[ ][Son]. In fact, however, [Father] has continued to rely excessively on corporal punishment. . . .

. . . .

At the time the Divorce Decree was entered, [the original judge] also expected that [Son] would continue to enjoy stability and success in [Father]'s care. Contrary to [the original judge]'s expectations, the evidence presented at trial leads the Court to find that [Son] has not been thriving in [Father]'s care. . . . [C]redible testimony from Dr. Valerie Hale, the Court-appointed evaluator, leads the Court to find that since [the original judge] entered his findings, [Son]'s level of social, educational, and psychological functioning has deteriorated. Indeed, at various times since the Decree [was] entered, [Son] has displayed increased anxiety levels and seriously dysfunctional ideation and behaviors.[ ]

[The original judge found] "that if either [Father] or [Mother] do not foster a loving relationship for [Son] by both parents for the benefit of [Son], by . . . limiting access to the child unreasonably . . . then . . . th[at] parent does not have the best interest of [Son] at heart and the Court would take that into account in the future, if any petition to modify the Decree of Divorce comes before the Court."

Testimony from Dr. Valerie Hale . . . indicates that [Father] has attempted to marginalize [Mother]'s relationship with [Son] by taking actions such as unplugging the phone, . . . restricting other contacts between [Son] and [Mother] . . . [and] objecti[ng] to having [Mother] participate in [Son's mandatory special needs meetings at school].

The trial court also took note of the fact that the judge who entered the Divorce Decree took steps to ensure that both parents could be a part of Son's life to the fullest extent possible; most notable among these steps was the inclusion of the now-invalidated joint custody provision.

¶ 17 In sum, the trial court found that since entry of the Divorce Decree, Mother had relocated to Son's neighborhood, the joint custody provision had been invalidated, Father's parenting skills had not improved, Son's educational and social performance had deteriorated, and Father had actively attempted to exclude Mother from Son's life. Implicit in the trial court's findings is the fact that the current custody arrangement had proven unworkable, and this by itself is sufficient to meet the changed circumstances threshold. See Huish, 2008 UT App 283, ¶ 13, 191 P.3d 1242. Moreover, none of these facts was anticipated in the Divorce Decree, they "focus [almost] exclusively on the parenting ability of the custodial parent and the functioning of the established custodial relationship," see Kramer, 738 P.2d at 626, and they address "the kind of circumstances on which [the] earlier custody decision was based," see Becker, 694 P.2d at 610. Thus, in light of the trial court's detailed factual findings and the unusual legal and factual changes in this case, we see no abuse of discretion in the trial court's determination that there had been a substantial and material change in circumstances since entry of the Divorce Decree.

## C. Son's Best Interests

¶ 18 Father also cursorily argues that the trial court erred in determining that custody modification was in Son's best interests. However, "[i]t is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief." Valcarce v. Fitzgerald, 961 P.2d 305, 313 (Utah 1998). An argument is inadequately briefed if it "wholly lacks legal analysis and authority to support [it]." State v. Wareham, 772 P.2d 960, 966 (Utah 1989). The entirety of Father's argument regarding Son's best interests is one paragraph long, provides no citation to legal authority or the record, and contains only conclusory statements such as "[Father] cared for [Son] with utmost care." Because Father's best inter-

ests argument is inadequately briefed, we decline to address it further.[4]

## II. Child Support Modification

¶ 19 Father contends that the trial court's modification of child support following the order of custody modification was legally inappropriate because Mother neither asked for, nor was she entitled to, such relief. Father further alleges that the trial court applied the wrong child support guidelines in determining the amount of child support. We address each of these arguments in turn.

### A. Modification of Child Support Is Legally Appropriate

¶ 20 Father argues first that Mother's failure to request support modification in her petition to modify custody is fatal to the trial court's award. The trial court recognized Mother's failure to request support modification in her petition but nevertheless determined that rule 54(c)(1) of the Utah Rules of Civil Procedure, combined with a trial court's inherent discretion in domestic cases, allows the modification in this case. We agree.

¶ 21 Rule 54(c)(1) states, in pertinent part, that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Utah R. Civ. P. 54(c)(1). This rule also allows trial courts discretion, in the interest of justice, to "determine the ultimate rights of the parties ... as between ... themselves." *Id.* The Utah Code further buttresses the trial court's child support decision, stating that "[o]bligations ordered for child support ... are for the use and benefit of the child and *shall follow the child.*" Utah Code Ann. § 78B–12–108(1) (2008) (emphasis added). Rule 54(c)(1) and the Utah Code, when considered together, allow the trial court discretion to modify the parties' child

support obligations despite Mother's failure to request such relief in her petition.

¶ 22 Father also contends that even if the trial court had the discretion to modify child support, it was not appropriate because the original order in the Divorce Decree was adequate. We disagree. Utah Code section 78B–12–203(8)(b) provides that "Social Security benefits received by a child due to the earnings of a parent shall be credited as child support *to the parent upon whose earning record it is based,* by crediting the amount against the potential obligation of that parent." *Id.* § 78B–12–203(8)(b) (emphasis added). When entering the Divorce Decree, the trial court credited the SSDI benefits against both parents' support obligations, despite the fact that the benefits stem entirely from Mother's disability.

¶ 23 Although Father acknowledges that the SSDI benefits should be credited toward Mother's support obligation, he argues that nothing in the language of section 78B–12–203(8) precludes the trial court from crediting the SSDI benefits toward his support obligation as well. Again, we disagree. The plain language of section 78B–12–203(8) clearly states that such benefits are to be credited against the support obligation of "the parent upon whose earning record it is based." *Id.* This language does not give trial courts discretion to alter this credit. *See id.; cf. Meenderink v. Meenderink,* 2006 UT App 348, ¶ 8, 144 P.3d 219 (determining that the trial court had no discretion to decide whether or how to apply the credit for social security disability benefits, stating simply that the predecessor to section 78B–12–203(8) "mandates full crediting of the SSDI payments toward [the earning parent's] child support obligation"). Accordingly, we conclude that the trial court did not err in modifying child support to provide Mother and Son the relief to which they are entitled and to correct the error in the original child support award.[5]

---

4. We nevertheless observe that there was sufficient evidence that Son's best interests would be served by the custody modification.

5. Relatedly, Father briefly argues that the law of the case doctrine prevents the trial court from modifying the original support order even if it

was entered in error. We disagree, because the law of the case doctrine does not go so far as to "prohibit a judge from catching a mistake and fixing it." *Trembly v. Mrs. Fields Cookies,* 884 P.2d 1306, 1311 (Utah Ct.App.1994) (internal quotation marks omitted).

**B. The Amount of Modified Child Support is Incorrect**

¶ 24 Father asserts that even if support modification is appropriate, the amount of the support awarded is incorrect because the trial court applied the wrong statutory child support guidelines. Section 78B–12–301 of the Utah Code contains two tables to be used for establishing or modifying child support orders. *See* Utah Code Ann. § 78B–12–301. Which table to be used is determined by the date of the establishment or modification of the support order. The table contained in subsection (1) applies to any "child support order ... established or modified on or before December 31, 2007," while the table in subsection (2) is to be used—with several exceptions not relevant to our analysis—to modify all "support order[s] entered for the first time on or after January 1, 2008." *Id.* § 78B–12–301(1)–(2).

¶ 25 Although Father contends that the Divorce Decree contained an order relating to child support, Mother argues that the decree "did not include a child support order, as contemplated by the [Utah Code.]" Mother further asserts that the Divorce Decree failed to include required findings for a child support order and determined that the SSDI benefits were awarded in lieu of a child support order. Mother therefore urged the trial court to modify support based upon the table in subsection (2). The trial court agreed with Mother and applied the table in subsection (2) because it concluded that the Divorce Decree did not contain a child support order. To determine the correctness of this conclusion, we must decide whether the 2005 Divorce Decree includes a child support order: If it does, then the table in subsection (1) should have been applied; if it does not, then the trial court correctly applied the table in subsection (2). *See id.*

¶ 26 In connection with granting custody of Son to Father, the Divorce Decree stated that "it is reasonable to allow [the SSDI] benefits to serve as child support and it is reasonable to not require child support to be paid by [Mother]." The Divorce Decree thus concluded that the SSDI benefits "should be used to satisfy both parties' child support obligations, with the parties having no further child support claim against or obligation to each other." Despite Mother's arguments to the contrary, this order clearly addressed child support and is therefore properly considered a child support order. Because the Divorce Decree contained a child support order and was entered "before December 31, 2007," the trial court erred in applying the table in subsection (2) to determine the modified child support amount. *See id.* Accordingly, we reverse and remand for a determination of the amount Father must pay under the table contained in subsection (1).

## CONCLUSION

¶ 27 We conclude that the trial court did not err in failing to hold separate hearings on the issues of changed circumstances and best interests. We also see no abuse of discretion in the trial court's determination that substantial and material changes had occurred since entry of the Divorce Decree. And because Father has inadequately briefed his challenge to the trial court's best interests determination, we affirm that determination as well. Thus, there was no error in the trial court's decision to modify custody. Finally, we conclude that although it was proper for the trial court to modify child support, the trial court applied the wrong guidelines in determining the amount thereof. We therefore affirm the trial court's decision in all respects except for its determination of the amount of modified child support, which determination we reverse and remand so that the court may recalculate child support according to the correct child support guidelines.

¶ 28 WE CONCUR: WILLIAM A. THORNE JR. and CAROLYN B. McHUGH, Judges.