*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 52**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ELLA TURNER,
*Petitioner,*

*v.*

UNIVERSITY OF UTAH HOSPITALS & CLINICS,
UNIVERSITY OF UTAH, and STATE OF UTAH,
*Respondents.*

No. 20120120
Filed August 16, 2013

Third District, Salt Lake Dep't
The Honorable Tyrone E. Medley
No. 20091073

On Certiorari to the Utah Court of Appeals

Attorneys:

Matthew H. Raty, Sandy, for petitioner

David G. Williams and Bradley R. Blackham, Salt Lake City,
for respondent University of Utah Hospitals & Clinics

David G. Williams, Rodney R. Parker and Bradley R. Blackham,
Salt Lake City, for respondent University of Utah

David G. Williams, Terrence L. Rooney, and Bradley R. Blackham,
Salt Lake City, for respondent State of Utah

Ryan M. Springer and Michael D. Karras, Holladay,
for amicus curiae Utah Association for Justice

CHIEF JUSTICE DURRANT, authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1    In 2002, Ella Turner was severely injured in an automobile accident. She received treatment for her injuries at the University Hospital (Hospital), where she claims she was rendered a paraplegic due to the Hospital's negligence. At trial, the jury found unanimously that the Hospital was not negligent. Ms. Turner appealed to the court of appeals, which upheld the jury's verdict. Ms. Turner then petitioned for certiorari, which we granted.

¶2    On certiorari, Ms. Turner argues that she is entitled to a new trial for two reasons. First, she argues that the court of appeals' application of the "cure-or-waive rule," which requires litigants to use their peremptory challenges on jurors who were unsuccessfully challenged for cause in order to preserve the issue of jury bias for appeal, yielded an unfair result in this case. Specifically, she argues that despite her efforts to remove potentially biased jurors by challenging them for cause and then by exhausting all of her peremptory challenges, the jury remained biased, and that the court of appeals' application of the cure-or-waive rule resulted in the affirmance of a biased jury's verdict. Accordingly, she asks us to "modify or clarify" the cure-or-waive rule and grant her a new trial. Ms. Turner's second argument is that the court of appeals incorrectly determined that it was harmless error for the district court to include one of the jury instructions.

¶3    We agree with Ms. Turner on both counts. The cure-or-waive rule did yield an unfair result in this case, and the inclusion of the jury instruction was error. Accordingly, we grant Ms. Turner's request for a new trial due to the erroneous jury instruction and, even though we need not reach the issue of jury bias, we nevertheless take this opportunity to guide the litigants and the district court with respect to the question of how to properly preserve that issue for appeal. In so doing, we reject the cure-or-waive rule entirely and adopt the standard set forth below in its stead.

## BACKGROUND

¶4    On August 11, 2002, Ms. Turner was admitted to the Hospital after suffering a single-car rollover accident. Upon her arrival, doctors diagnosed her with multiple injuries, including a closed head injury accompanied by significant brain swelling, fractured vertebrae in all three parts of her spine, multiple rib fractures, lung contusions, a liver laceration, and extensive scalp laceration. But despite these injuries, doctors noted that Ms. Turner's legs and arms were still fully functional. Doctors also performed a CT scan of Ms.

Turner's spine, which showed that her spine was in a "relatively normal" alignment.

¶5    Due to the severity of her injuries, Ms. Turner's doctors determined that neither a back brace nor surgery could be used to treat Ms. Turner's fractured spine. Instead, they transferred her to the Neuro Critical Care Unit (NCC) with instructions that she remain there on bed rest under spinal precautions until she was healthy enough for a brace or surgery. The parties do not dispute the standard of care for a patient on spinal precautions. While spinal precautions are in place, the patient can be moved only by using a "log rolling" technique, which requires a minimum of three people so that each part of the patient's body can be rolled in unison, thereby maintaining proper alignment of the patient's spine.

¶6 Ten days later, on August 21, 2002, Ms. Turner received an MRI scan that showed dramatic changes in the alignment of her thoracic spine. Her attending orthopedic physician discussed the differences between the MRI and the August 11th CT scan with Ms. Turner's mother and sister a day later and stated, "I don't know how or when this was done, but it was done here at the hospital." As a result of the spinal injury revealed by the MRI, Ms. Turner was subsequently diagnosed with irreversible paraplegia.

¶7    Ms. Turner sued the Hospital for negligence. During jury selection, she challenged a number of jurors for cause, the majority of which the district court granted. Four of these challenges were denied, however. Ms. Turner also suspected that a fifth juror had concealed his true feelings during voir dire and, in her view, posed the greatest threat to a fair trial. Ms. Turner therefore had three peremptory challenges to deal with five potentially biased jurors. She decided to spend two of them on jurors who had been challenged for cause previously, but then she used her final challenge on the juror whom she suspected of harboring hidden biases. The other two jurors ended up serving on the jury.

¶8    At trial, Ms. Turner presented evidence showing that the Hospital had failed to post a sign at the head of her bed that would notify all care providers to follow spinal precaution guidelines. She also introduced eyewitness testimony that, prior to August 22, 2002, her attending nurses had failed to observe the spinal precautions and that they had instead moved her, sometimes "aggressively," without utilizing the required log rolling procedure. Ms. Turner argued that her injuries were caused by the nurses' failure to follow the spinal precautions and that this failure was in part due to the Hospital's failure to post the sign at the head of her bed.

¶9 The Hospital countered Ms. Turner's arguments by presenting evidence that the practice of posting a sign for spinal precautions at the head of the patient's bed was not uniform, but varied depending on the admitting nurse. The Hospital also presented evidence that the nurses caring for Ms. Turner were aware of the spinal precautions, and that they did not move her without utilizing the log rolling technique. In fact, the Hospital's nursing expert testified that spinal precautions are "always communicated during nurse-to-nurse shift reports" and that the Hospital's records reflected that the nurses were making these communications in their shift reports.

¶10 The Hospital also presented evidence about the differences between a CT scan and an MRI, arguing that soft tissues, including the spinal cord, are not effectively imaged by CT scanning technology. Thus, the Hospital argued that Ms. Turner could not rely on the CT scan to eliminate the possibility that her spinal cord had already been injured at the time of her arrival at the Hospital. Additionally, the Hospital argued that even if an MRI had been performed as soon as Ms. Turner was admitted, it would not have changed the doctors' decision to treat Ms. Turner with bed rest under spinal precautions.

¶11 Prior to the jury's deliberations, the trial judge issued the following jury instruction, Instruction No. 30, over Ms. Turner's objection:

> When there is more than one method of treatment that is approved by a respectable portion of the medical community, and no particular method is used exclusively by all providers, it is not medical malpractice for a provider to select one of the approved methods, even if it later turns out to be a wrong selection, or one not favored by some other providers. The provider has the burden to prove that the method used is approved by a respectable portion of the medical community.

The jury returned a verdict of no negligence, and Ms. Turner appealed.

¶12 At the court of appeals Ms. Turner argued, among other things, that the district court erred by giving the jury instruction and that the jury was biased.[1] The court of appeals, relying on our deci-

---

[1] *Turner v. Univ. of Utah Hosps.*, 2011 UT App 431, ¶¶ 8–13, 40, 271 P.3d 156.

sion in *Butler v. Naylor*,[2] determined that even if the district court erred in giving the jury instruction, "the error would be harmless as the jury could have reached the no-cause verdict on [an] alternative theor[y]," such as the theory that "the NCC nurses always log rolled Turner."[3] And with respect to the biased jury question, the court of appeals applied the cure-or-waive rule, "which means that in order to raise the issue of juror bias on appeal, the appealing party must [have] exercise[d] a peremptory challenge, if one is available, against the juror unsuccessfully challenged for cause, and the challenged juror must have actually served on the jury."[4] Because Ms. Turner failed to comply with this rule, the court of appeals reasoned that

> if we determine that one of the four jurors she challenged for cause was not biased, her argument is not preserved. This is so because if one of the four jurors was not biased, Turner would have had enough peremptory challenges to dismiss the remaining three prospective jurors and the trial court's error, if any, in not removing those jurors for cause would be harmless.[5]

The court of appeals then determined that one of the jurors was not biased and that therefore Ms. Turner's argument for juror bias was not preserved.[6] Ms. Turner petitioned this court for certiorari, which we granted. We have jurisdiction over this matter pursuant to section 78A-3-102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶13 "On certiorari, we review for correctness the decision of the court of appeals, not the decision of the district court."[7]

---

[2] 1999 UT 85, 987 P.2d 41.

[3] *Turner*, 2011 UT App 431, ¶ 40 (second alteration in original) (internal quotation marks omitted).

[4] *Id.* ¶ 8 (alterations in original) (internal quotation marks omitted).

[5] *Id.* ¶ 9.

[6] *Id.* ¶ 13.

[7] *Wasatch Cnty. v. Okelberry*, 2008 UT 10, ¶ 8, 179 P.3d 768 (internal quotation marks omitted).

**ANALYSIS**

¶14  We first address Ms. Turner's argument that she is entitled to a new trial because the district court erroneously issued Instruction No. 30. Specifically, Ms. Turner argues that this instruction was unwarranted and prejudicial because there was no evidence presented at trial of an "alternative treatment method." She also argues that the court of appeals misapplied our decision in *Butler v. Naylor*[8] to the facts of this case. For the reasons stated below, we agree and remand this case to the district court for a new trial.

¶15  Because Ms. Turner is entitled to a new trial due to the prejudicial jury instruction, we take this opportunity to provide guidance to both the litigants and the district court with respect to the proper method of preserving the issue of jury bias for appeal.[9] As the court of appeals noted, we appear to have adopted the cure-or-waive rule in the case of *State v. Baker*.[10] We are, however, dissatisfied with the result yielded by this rule in the present case and are skeptical about its prospective usefulness. Accordingly, we overrule *Baker* and adopt a new standard for determining whether the issue of jury bias is preserved for appeal.

I.  ISSUING JURY INSTRUCTION NO. 30 WAS ERROR BECAUSE IT WAS UNSUPPORTED BY THE EVIDENCE AND UNDERMINES OUR CONFIDENCE IN THE VERDICT

¶16  Ms. Turner argues that her case was prejudiced by the district court's inclusion of Instruction No. 30 because "there was no evidence of any approved, alternate treatment method in the case." Ms. Turner does not dispute the fact that there was conflicting evidence about whether the standard of care included posting a sign on her bed, but argues that this evidence "could not create an alterna-

---

[8] 1999 UT 85, 987 P.2d 41.

[9] *See, e.g.*, *State v. White*, 2011 UT 21, ¶ 34, 251 P.3d 820 (addressing an issue "outside the scope of the narrow certiorari question presented . . . in order to provide guidance to the trial court on remand"); *State v. Jeffs*, 2010 UT 49, ¶ 39, 243 P.3d 250 (examining a nondispositive claim "in order to guide the trial court on remand"); *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2003 UT 5, ¶ 10, 73 P.3d 320 (addressing a nondispositive issue because "it may again arise on remand").

[10] 935 P.2d 503 (Utah 1997).

tive treatment method to defeat [Ms. Turner's] liability claim . . . that [the Hospital] improperly moved and injured [Ms. Turner]." Instead, Ms. Turner argues that the evidence regarding the absence of the sign was offered "only [as an] explanation for the improper movement, not proof that would allow [Ms. Turner] a recovery." Consequently, Ms. Turner argues that the court of appeals misapplied our decision in *Butler v. Naylor*[11] when it disposed of this claim and asks us to reverse and grant a new trial. Because we conclude that the issuance of Instruction No. 30 was both erroneous and prejudicial, we reverse and grant a new trial.

¶17 "Claims of erroneous jury instructions present questions of law that we review for correctness. We therefore review the instructions given to the jury without deference to the trial court" or, in this case, the court of appeals.[12] Additionally, "[e]rrors with regard to jury instructions require reversal only if confidence in the jury's verdict is undermined."[13]

¶18 In its decision, the court of appeals relied on the following language from *Butler*:

> When a civil case is submitted to a jury on several alternative theories and the jury does not identify which theory or theories it relied on in reaching its verdict, we may affirm the verdict if the jury could have properly found for the prevailing party on any one of the theories presented.[14]

¶19 The court of appeals noted that the jury did not explain the grounds for its finding of no negligence. The court then interpreted *Butler*'s use of the term "theory" quite broadly, determining that "the jury could have based the no-cause verdict upon a finding that the NCC nurses always log rolled Turner . . . regardless of whether they were supposed to post a sign."[15] In other words, the court of appeals determined that the verdict of no negligence could be attributed to

---

[11] 1999 UT 85, 987 P.2d 41.

[12] *State v. Jeffs*, 2010 UT 49, ¶ 16, 243 P.3d 1250 (citation omitted).

[13] *Hess v. Canberra Dev. Co.*, 2011 UT 22, ¶ 38, 254 P.3d 161 (internal quotation marks omitted).

[14] *Turner v. Univ. of Utah Hosps.*, 2011 UT App 431, ¶ 40, 271 P.3d 156 (quoting *Butler*, 1999 UT 85, ¶ 21).

[15] *Id.*

the "theory" that the NCC nurses always log rolled Ms. Turner, as opposed to the "theory" that they were not required to post a sign.

¶20 Ms. Turner argues that this is a misapplication of *Butler*. Specifically, she notes that the language relied upon by the court of appeals flows from a line of cases beginning with *Leigh Furniture & Carpet Co. v. Isom*[16] and that, in each of these cases, the plaintiffs had advanced several different *causes of action* as grounds for recovery. For instance, in *Leigh*, we affirmed a jury's verdict for a counter-claimant based on the viability of his claim for interference with prospective economic relations.[17] This counter-claimant, however, had also advanced a claim for interference with contract, but failed to prove that cause of action.[18] In affirming the verdict, we observed that

> where more than one cause of action has been submit-ted to a jury and where one of those causes of action was error-free, supported by substantial evidence, and an appropriate basis for the general verdict, the judg-ment on that verdict will be affirmed, even though the evidence was insufficient to sustain the verdict on one of the other causes of action submitted.[19]

Ms. Turner then demonstrates that in subsequent cases where we applied this standard, we changed the language from "causes of ac-tion"[20] to "alternative grounds"[21] and then, finally, to "alternative theories."[22]

¶21 But in this case, Ms. Turner argues, there was only one "cause of action," "ground," or "theory" advanced for recovery: neg-

---

[16] 657 P.2d 293 (Utah 1982). The other cases in this line are *Barson ex rel. Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832 (Utah 1984); *Cambelt Int'l Corp. v. Dalton*, 745 P.2d 1239 (Utah 1987); and *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461 (Utah 1996).

[17] 657 P.2d at 313.

[18] *Id.* at 301.

[19] *Id.* at 301–02.

[20] *Barson*, 682 P.2d at 835.

[21] *Campbelt*, 745 P.2d at 1241–42.

[22] *Billings*, 918 P.2d at 467.

ligence. Thus, she asserts that "there was no error-free alternative for the jury to choose and upon which the court of appeals could disregard the prejudicial jury instruction." Hence, she concludes, *Butler* is inapplicable here, and the court of appeals erred by relying upon it. We agree.

¶22 *Butler* is distinguishable from the facts of this case because, unlike *Butler* and the subsequent cases applying it, here there was only one claim asserted, a claim for medical malpractice, and Instruction No. 30 expressly stated that "it is *not* medical malpractice for a provider to select one of the approved methods . . . [w]hen there is more than one method of treatment." (Emphasis added.) Because we believe that jurors take jury instructions seriously, we are troubled by the fact that this Instruction explicitly directs the jury to return a "no negligence" verdict if it finds that there was "more than one method of treatment." Given the way this Instruction is worded, therefore, it is reasonable to assume that the jury would have addressed the issue of alternative treatment plans first, rather than going straight to the issue articulated by Instruction No. 27,[23] as the court of appeals assumed.[24] And because Ms. Turner advanced only *one* theory for recovery, namely medical malpractice, our confidence

---

[23] Instruction No. 27 stated:

> A nurse is required to use the same degree of learning, care, and skill ordinarily used by other qualified nurses in good standing providing similar care. This is known as the "standard of care." The failure to follow the standard of care is a form of fault known as "nursing negligence." In order to establish nursing negligence, plaintiff has the burden of proving three things: (1) what the standard of care is; (2) that the nurse failed to follow this standard of care; and, (3) that this failure to follow the standard was a cause of plaintiff's harm.

> In this action, plaintiff alleges that nurses employed by defendants failed to follow the standard of care by improperly moving plaintiff while she was a patient at University Hospital in August 2002.

> If you find that defendants' nurses breached the standard of care in any of these respects, then you must determine whether that failure was a cause of plaintiff's harm.

[24] *Turner*, 2011 UT App 431, ¶ 40.

in the jury's verdict is undermined because Instruction No. 30 expressly forecloses the avenue of recovery set forth in Instruction No. 27 if the jury found that there were alternative, approved methods of treatment. Thus, we agree with Ms. Turner that the court of appeals' reliance on *Butler* in this case is misplaced.

¶23  We also note that even if the court of appeals was correct in assuming that the jury could have relied on the theory presented in Instruction No. 27 to support its verdict, Instruction No. 30 was still erroneous because there was no evidence supporting the existence of an alternative, approved treatment method. The Hospital argues that the evidence regarding the placing of a sign was sufficient to support this instruction, asserting that "the trial testimony established two potential treatment methods. The first method is to post a sign . . . [while] [t]he second method is not to post a sign and rely on shift reports and the patient's medical records to pass information regarding spine precautions."

¶24  We are not persuaded by this argument. While it is true that the evidence regarding the procedure of posting a sign on the patient's bed was conflicting, in our view this is not sufficient to support the conclusion that posting a sign is a "method of treatment." As the Hospital admits, when Ms. Turner was admitted her doctors had to choose between three "treatment options": surgery, a back brace, or bed rest under spinal precautions. These sorts of options are what is contemplated by the term "method of treatment," as would the procedures involved for a patient under spinal precautions (e.g., the log rolling procedure). Signs and shift reports, however, are not "methods of treatment," but means of carrying out the method selected by the doctor, which, in this case, was bed rest under spinal precautions. We conclude that the decision of whether or not to post a sign does not qualify as a "method of treatment" and that, therefore, there was no evidence that supported the inclusion of Instruction No. 30. The potential confusion created by this mislabeling is significant in that this instruction could have led the jury to erroneously conclude that if it was acceptable to either post or not post a sign, they should find no medical negligence. Accordingly, we hold that the district court erred in giving Instruction No. 30 and that Ms. Turner is entitled to a new trial due to its prejudicial nature.

## II. BECAUSE OF ITS TENUOUS FOUNDATION AND LIMITED UTILITY, WE ABANDON THE CURE-OR-WAIVE RULE AND ADOPT A NEW STANDARD FOR PRESERVING THE ISSUE OF JURY BIAS

¶25  Because Ms. Turner is entitled to a new trial due to the erroneous inclusion of Instruction No. 30, we take this opportunity to clarify for the litigants and the district court the applicable standard for preserving an argument based on jury bias for appeal. In this case, the court of appeals applied the cure-or-waive rule and concluded that Ms. Turner had failed to preserve the issue of jury bias for appeal.[25] Ms. Turner argues that the application of the cure-or-waive rule to the facts of this case yielded an unfair result. We agree. Accordingly, we abandon the cure-or-waive rule in favor of the standard articulated below and remand this case to the district court for further proceedings consistent with this opinion.

¶26  As the court of appeals noted, we adopted the cure-or-waive rule in *State v. Baker*.[26] That case's adoption of this rule, however, was far from straightforward. First, *Baker* was a criminal case, and there was no discussion about the rule's applicability within a civil context. In fact, the rule was not applied in a civil context until the court of appeals did so in 2007.[27] Second, the rule itself only garnered a plurality of votes: Justices Howe and Russon voted to adopt the rule, but Associate Chief Justice Stewart authored a separate concurrence, wherein he expressed doubts about the rule's effectiveness in assuring fair trials but nevertheless expressed satisfaction "that the cure-or-waive rule is properly applied *in this case*."[28] Justice Zimmerman dissented, and Justice Durham concurred with his dissent. Thus, the rule itself was supported by just two justices, while a third arguably voted to adopt it only for that particular case. Finally, the rule has not been widely applied in Utah cases.[29]

---

[25] *Turner v. Univ. of Utah Hosps.*, 2011 UT App 431, ¶¶ 8–13, 271 P.3d 156.

[26] 935 P.2d 503, 510 (Utah 1997).

[27] *See Clatterbuck v. Call*, 2007 UT App 76U, 2007 WL 701039.

[28] *Baker*, 935 P.2d at 510 (emphasis added).

[29] By our count, the rule has been applied in just a handful of cases, and discussed in only a few others. *See Baker*, 935 P.2d at 510 (adopting the cure-or-waive rule); *Turner*, 2011 UT App 431, ¶¶ 8–13 (applying the cure-or-waive rule in a civil context); *Clatterbuck*, 2007

(continued)

¶27  In addition to the shaky foundations of this rule, we are also concerned about the results its application yielded in this case. While we agree with the observation made in *Baker* that the right to peremptory challenges is not constitutional,[30] we disagree with the reasoning in *Baker* that places the burden on the defendant to utilize these challenges in order to correct what could be perceived as judicial error.[31] While it is true that "[b]oth parties and the court share a duty to help ensure a fair trial—a trial in which a jury impartially weighs the evidence,"[32] it is nevertheless a reality that both parties view their peremptory challenges as a tactical tool and desire to use them accordingly. This reality is illustrated clearly in this case, where Ms. Turner had to determine whether to expend her peremptory challenges on jurors whom she had already challenged for cause, or on a juror whom she suspected of harboring hidden biases. She chose the latter option, and consequently the previously challenged jurors were seated on the jury. Thus, under the cure-or-waive rule, Ms. Turner was prevented from raising the issue of jury bias on appeal because the rule required her to expend that final peremptory challenge on one of the other two jurors who had been challenged for cause.

¶28  This result strikes us as unduly harsh to the appellant. Furthermore, it seems to us that, in the end, this issue boils down to a pure policy determination. On the one hand, there is the constitutional right to a fair trial, while on the other is the fact that peremptory challenges are merely a means to ensure that end. The question, therefore, is whether attorneys should be allowed to use peremptory challenges on jurors whom they would otherwise be unable to challenge for cause *without* thereby losing the ability to raise the issue of jury bias on appeal. In *Baker*, we expressed the concern that "if a defendant needs to show only that he used all of his peremptories and

---

UT App 76U (same); *see also State v. Wach*, 2001 UT 35, ¶ 36 n.3, 24 P.3d 948 (discussing the cure-or-waive rule, but not applying it); *State v. Robertson*, 2005 UT App 419, ¶ 7 n.1, 122 P.3d 895 (same).

[30] *Baker*, 935 P.2d at 506 (observing that "the peremptory is not constitutionally guaranteed").

[31] *Id.* at 507 ("To preserve the issue on appeal, a defendant whose for-cause challenge has been denied must exercise a peremptory challenge, if one is available, to achieve a legally impartial jury.").

[32] *Id.* (emphasis omitted).

that a biased juror sat . . . there is a great temptation to sow error."[33] That is, "[a] defendant whose for-cause challenge is erroneously denied by the trial court could always generate reversible error merely by expending all of his peremptories on other jurors, adverse or not."[34]

¶29 We find this reasoning unpersuasive and insufficient to justify continued adherence to the cure-or-waive rule for several reasons. First, it is simply not the case under the rule articulated below that a party could "create reversible error" merely by expending all of their peremptory challenges on jurors other than those who were previously challenged for cause. Under the rule we adopt today, such a course of action would merely preserve the issue of jury bias for appeal. It would not automatically create reversible error, however, since the party would still have to demonstrate that (a) a juror who was previously challenged for cause sat on the jury, and (b) that juror was, in fact, biased.[35] Only then would an appellate court be justified in reversing based on jury bias.

¶30 Second, the concerns expressed in *Baker* ignore the fact that there are cases where attorneys have good reason to suspect bias, but lack sufficient grounds to challenge those jurors for cause. In such a situation, the attorney should be allowed to use a peremptory challenge on that juror without losing the ability to raise the issue of jury bias on appeal. And this case is a perfect illustration of such a situation. Here, Ms. Turner had three peremptory challenges at her disposal, but suspected that five jurors were biased against her. Four of these jurors had previously been challenged for cause, but she suspected that the fifth posed the greatest threat to a verdict in her favor. Thus, in this situation, Ms. Turner should have been allowed to use one of her peremptory challenges on the juror whom she suspected of bias (but lacked grounds to challenge for cause) without thereby losing the ability to raise the issue of jury bias on appeal.

¶31 Accordingly, we reject the cure-or-waive rule and adopt the rule stated in *People v. Hopt*[36] in its stead. In that case, a defendant had peremptory challenges available but failed to use them to dismiss a previously challenged juror. When the defendant then at-

---

[33] *Id.* at 507.

[34] *Id.*

[35] *See infra* ¶¶ 31–32.

[36] 9 P. 407, 408 (Utah Terr. 1886), *aff'd*, 120 U.S. 430 (1887).

tempted to argue jury bias on appeal, we held that "[u]ntil [the defendant] had exhausted his peremptory challenges, he could not complain" about possible jury bias.[37]

¶32 We conclude that this rule strikes the right balance between the competing interests mentioned above. On the one hand, it requires that the parties utilize all available peremptory challenges before the issue of jury bias can be raised on appeal, thereby encouraging them to use their challenges in order to achieve the goal of a fair trial. But as opposed to the cure-or-waive rule, it does not *require* the parties to use those challenges in a particular way, thus leaving the door open to their tactical use. That is, parties need not use all of their challenges on jurors who were previously challenged for cause in order to preserve the issue of jury bias for appeal. Rather, as long as (a) all of the party's peremptory challenges were used and (b) a juror who was previously challenged for cause ends up being seated on the jury, the issue of jury bias has been preserved, which is precisely what has occurred in this case. Ms. Turner used all of her peremptory challenges in the way that she thought afforded her the best chance at prevailing. But despite her efforts, jurors whom she thought should have been removed for cause ended up being seated on the jury, and hence she should be allowed to raise this issue of jury bias on appeal where, if she is successful in demonstrating that a challenged juror was biased, she would be entitled to a new trial.[38] We therefore expressly reject the cure-or-waive rule and in its stead adopt the rule articulated above as the proper standard for determining when the issue of jury bias has been properly preserved for appeal. We also overrule *Baker* to the extent that it is inconsistent with this opinion and remand this case to the district court for further proceedings consistent with this opinion.

## CONCLUSION

¶33 The district court erred when it included Instruction No. 30 because no evidence was before the jury that supported that instruction. And because its presence undermines our confidence in the jury's verdict, we conclude that Ms. Turner is entitled to a new trial.

---

[37] *Id.*

[38] Since we have already concluded that Ms. Turner is entitled to a new trial due to the erroneous jury instruction, we need not reach the issue of whether the previously challenged jurors in this case were, in fact, biased.

On remand, we instruct the litigants and the district court that the cure-or-waive rule is no longer the standard governing preservation of jury bias. Instead, appellate courts will apply the *Hopt* rule, as stated above, in order to determine whether the issue of jury bias has been adequately preserved.

———————