2025 UT App 14

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ERIC ALAN TAYLOR,
Appellant.

Opinion
No. 20220712-CA
Filed January 30, 2025

Second District Court, Ogden Department
The Honorable Reuben J. Renstrom
No. 201901262

Freyja Johnson, Hannah K. Leavitt-Howell, and
Melissa Jo Townsend, Attorneys for Appellant

Derek E. Brown and Lindsey L. Wheeler,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and JOHN D. LUTHY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Eric Alan Taylor appeals his conviction of sodomy on a child. He argues that the district court abused its discretion in refusing to strike two jurors for cause. We agree, and we therefore vacate his conviction and remand the matter to the district court for a new trial.

## BACKGROUND

¶2 In June 2020, Taylor was charged with one count of sodomy on a child, a first-degree felony, related to recent

allegations of sexual abuse made by his previous girlfriend's then-twelve-year-old niece, who alleged multiple instances of sexual abuse by Taylor when she was five and six years old. Taylor pleaded not guilty, and the case proceeded to trial.

¶3     Trial was held in May 2022. During the jury selection phase of the trial, the district court, the prosecutor, and defense counsel examined potential jurors using a video conferencing platform.[1] Of relevance to the issues raised in this appeal are the exchanges with potential juror 14 (Juror 14) and potential juror 26 (Juror 26), which we recount in detail.

¶4     The examination of Juror 14 commenced with questions related to the fact that he was a police officer, a fact obvious from him joining the proceedings in uniform from his police car. Juror 14 explained that he had been a detective for several years and that he had handled "about 20" sexual abuse cases, including some that involved sodomy on a child. The prosecutor then asked Juror 14 whether, given his background, he nonetheless "could otherwise be fair and impartial," and Juror 14 responded, "I feel I could, yes." The prosecutor clarified, "You feel like you could just listen to the evidence in this case, the evidence that's presented, and hold the prosecution to the burden of proof, which is beyond a reasonable doubt, and otherwise afford the defendant the presumption of innocence?" And Juror 14 again responded, "Yes."

¶5     Defense counsel then asked Juror 14 additional questions regarding his work experience. In that dialogue, defense counsel asked Juror 14, "Ever arrested anyone you don't feel is guilty?"

---

1. Although there were two attorneys representing the State and two attorneys representing Taylor, we need not, for the purposes of this appeal, differentiate among them. Thus, for simplicity, we will simply refer to them in the singular as "the prosecutor" and "defense counsel," respectively.

Juror 14 responded, "No." Defense counsel then asked, "And how many have you charged that were actually factually innocent?" Juror 14 answered that he could not recall that any of them had been "factually innocent." In response, defense counsel questioned, "Yeah, kind of difficult, then, to judge another officer's arresting a defendant, is it not?" But Juror 14 responded, "No, not based on the facts." After a few further questions about Juror 14's work, the exchange ended with the following question:

> [Defense counsel]: Okay. And I just—the only last question I think I had is that you're telling the Court that, even though you've been an officer for a number of years, and you've had a number of—you've never had any cases that were factually inaccurate, I guess is what I'm saying, that were factually innocent, you would give the same courtesy of believing that of another officer?
>
> [Juror 14]: Yes.

¶6    The prosecutor then asked some follow-up questions, eliciting that Juror 14 did not actually charge individuals himself and that although some of his previous cases that had been "presented to the prosecution" without the prosecution choosing to move forward with filing charges against the individual, he understood "that's the process." The prosecutor then questioned as follows:

> [The prosecutor]: . . . [Y]ou understand the process today, or in this trial, would be for the—again, the State to present evidence, the defense does not have to present evidence. They have the presumption of innocence, that we have the burden of proof, and that otherwise, your verdict will be based on the evidence and whether you feel that we've met that burden of proof?

[Juror 14]: Yes, sir.

¶7     At this point, the examination concluded, and defense counsel moved to strike Juror 14 for cause, arguing, "He's convinced with himself that he's got a hundred percent of who he charges, they're all guilty. I just can't believe that he would not accept that a police officer would make a mistake, and make his charges, and not be in any different circumstance [than] he's in." The prosecutor responded that "being in law enforcement doesn't automatically disqualify someone" and that all of Juror 14's responses "clearly indicate[d] that he would be fair and impartial."

¶8     The district court ultimately decided to leave Juror 14 in the jury pool. The court seemed to rely on Juror 14's assessment of his abilities to be impartial, reasoning, "[E]ither he's not being honest with the Court . . . or he should be left in." However, the court did also note that it "[didn't] know how fair the question [was]" as to whether Juror 14 had *charged* innocent people and noted that the question "would've been more telling to the Court" if one of the parties had instead asked whether Juror 14 had "ever *arrested* somebody who . . . ultimately was innocent." (Emphasis added.)

¶9     The questioning of potential jurors continued, and the parties eventually examined Juror 26. Early in the prosecutor's exchange with Juror 26, Juror 26 indicated a bias in favor of law enforcement officers, although she ultimately indicated that she nonetheless thought that she could be a fair and impartial juror:

> [The prosecutor]: Is there another reason why you would favor prosecution or law enforcement?
>
> [Juror 26]: Well, . . . you know, law enforcement testimony, I think, has a greater weight than general public testimony. That's my opinion.

[The prosecutor]: Okay. . . . [T]hat's just how you feel generally?

[Juror 26]: That's how I feel generally, yes.

[The prosecutor]: Okay. And so if you were to hear testimony—well, you will hear testimony from a law enforcement officer in this case, you would give that more weight than, say, anybody else that testified?

[Juror 26]: I think I would. Yes. Just because it's their job, and they've taken oaths, and—yeah. I think I would.

[The prosecutor]: And if there was other testimony, and everybody that's going to walk into this trial is going to put their hand to the square and take an oath that they promise to tell the truth, the whole truth, and nothing but the truth, knowing that they've taken that oath, does that even the score for you?

[Juror 26]: Maybe.

[The prosecutor]: That's fair.

[Juror 26]: I honestly have to weigh the testimony, yeah.

[The prosecutor]: Okay. . . . So knowing that you're going to hear testimony from a law enforcement officer and from other individuals, are you able to weigh that as you see fit, otherwise follow the instructions of the judge, and render a fair and impartial verdict based on solely the evidence that you hear?

[Juror 26]: Yes.

¶10    After this exchange, there was also some discussion about Juror 26's family member who "was assaulted at one time" as well as Juror 26's self-described "really emotional" nature that she was concerned might "cause [her] a problem being on a jury." But she nonetheless stated that she thought she "probably could" serve and that she could set aside her discomfort "and still render a fair and impartial verdict."

¶11    Thereafter, defense counsel asked several questions following up on Juror 26's indication of bias in favor of law enforcement that had been elicited during the prosecutor's questioning:

> [Defense counsel]: . . . . I'm going to go back to the beginning of your—the questions my colleague asked you, I want to talk a little bit more about the weight that you give law enforcement testimony.
>
>        And as I—make sure I understood you correctly, and that's that law enforcement officers, as a general rule, get a lot of—a lot of weight with you, right? And I think—
>
> [Juror 26]: Yes.
>
> [Defense counsel]: —and I think I heard you say they get a—they would potentially get a lot more weight than other witnesses because of their law enforcement and their oath, right?
>
> [Juror 26]: Well, and yeah, I mean, when it's your job, you—you see more, you have more experience, you know, you're—you can make better judgments

at a time that's, you know, maybe more emotional for other people . . . .

. . . .

. . . I think their testimony is—should carry a greater weight.

[Defense counsel]: And my—and my colleague asked you a great question. He asked you if you'd be able to listen to all the evidence and weigh the other testimony that's not law enforcement, and you said, yes, you would, that—that was your answer. Yeah.

[Juror 26]: I—yes, I think I could. Yes.

[Defense counsel]: I just want to clarify it. That— that doesn't mean that you wouldn't still give more weight to the police officers, it means you'd give everybody else a fair hearing and allow them to try and come up to the level that the police officers are at with you, right?

[Juror 26]: Yes. Yes.

[Defense counsel]: What if it came down to the police officer's word versus the defendant? Would that be a—a struggle for you?

[Juror 26]: You know, I—it—I would have a hard time if it was just one word against another word. I would have to look at all of the testimony. And, in all honesty, talk about it with the other jurors.

Defense counsel ended the questioning by asking whether Juror 26 thought she could be sure her family member's prior assault

experience would not "have some impact on [her] judgment" in this case; and Juror 26 responded, "I think I could—yes, I think I could do it."

¶12   At the conclusion of the examination, defense counsel moved to strike Juror 26 for cause. Although defense counsel agreed that Juror 26 "rehabilitated herself pretty well on most issues," he stated that he did not think Juror 26 "quite got over the line" on the issue regarding law enforcement testimony. The prosecutor responded that Juror 26 had been clear that "[s]he would weigh all the evidence and listen to the other testimony before she made a decision" and that she "very much felt" that she could be fair and impartial.

¶13   The district court denied the motion to strike, reasoning that Juror 26 was "the type of person" that would "follow [the court's] direction exactly" and would "jump five feet" if told by the court to do so "because she'll feel obligated." The court, although admitting to initial concern over "the emotion thing," was also convinced that Juror 26 could set aside her emotions to serve as a juror in this case.

¶14   At the end of jury selection, after each side had used all of its allowed preemptory challenges, the jury was seated, including Juror 14 and Juror 26. The trial moved forward, with each party presenting its case. And at the conclusion of trial, the jury convicted Taylor as charged.

ISSUE AND STANDARD OF REVIEW

¶15   On appeal, Taylor challenges the district court's refusal to strike Juror 14 and Juror 26 for cause. "A trial court's determination of whether to excuse a prospective juror for cause should not be reversed absent an abuse of discretion. We review such a decision with just deference because of the trial judge's

somewhat advantaged position in determining which persons would be fair and impartial jurors." *State v. Wach*, 2001 UT 35, ¶ 25, 24 P.3d 948 (quotation simplified). But we also "view the trial court's exercise of discretion . . . in light of the fact that it is a simple matter to obviate any problem of bias simply by excusing the prospective juror and selecting another." *Id.* (quotation simplified).[2]

## ANALYSIS

¶16   Under both the United States Constitution and the Utah Constitution, an accused is guaranteed the right to an impartial jury. *See* U.S. Const. amend. VI; Utah Const. art. I, § 12. And under rule 18 of the Utah Rules of Criminal Procedure, a potential juror may be challenged for cause where it appears "the juror is not likely to act impartially." Utah R. Crim. P. 18(e)(14). "Voir dire responses revealing evidence of bias or partiality give rise to a presumption that a potential juror is biased, and the juror must be dismissed unless that presumption is rebutted." *West v. Holley*, 2004 UT 97, ¶ 14, 103 P.3d 708; *see also* Utah R. Crim. P. 18(e)(14) ("No person may serve as a juror, if challenged, unless the judge is convinced the juror can and will act impartially and fairly.").

¶17   "Rebutting a presumption of bias or partiality may be accomplished if the challenged juror, upon further questioning, provides reason to believe that [the] previous statements showing evidence of bias were merely the product of a light impression and not one that would close the mind against the testimony that may be offered in opposition." *West*, 2004 UT 97, ¶ 15 (quotation simplified). But a presumption of bias or partiality is not rebutted "solely by a juror's bare assurance of her own impartiality because

---

2. Taylor raises two other errors on appeal. But because the resolution of the juror-selection issue results in a remand for a new trial, we need not address these additional issues.

a challenged juror cannot reasonably be expected to judge her own fitness to serve." *Id.*; *see also State v. Wach*, 2001 UT 35, ¶ 33, 24 P.3d 948 ("A statement made by a juror that she intends to be fair and impartial loses much of its meaning in light of other testimony and facts which suggest a bias." (quotation simplified)); *State v. Saunders*, 1999 UT 59, ¶¶ 34–35, 992 P.2d 951 ("The most characteristic feature of prejudice is its inability to recognize itself. . . . Ruling that a prospective juror is qualified to sit simply because he says he will be fair ignores the common-sense psychological and legal reality of the situation." (quotation simplified)). Instead, "the trial court must identify some other basis for overcoming the presumption of bias." *West*, 2004 UT 97, ¶ 17; *see also Wach*, 2001 UT 35, ¶ 33 ("The court, not the juror, must determine a juror's qualification." (quotation simplified)). In doing so, the court "must focus on the juror's expressions of attitudes, opinions, and feelings about subjects related to the case" to determine "whether the juror can stand in attitude of indifference between the parties." *West*, 2004 UT 97, ¶¶ 15–16 (quotation simplified).

¶18    If the presumption of bias or partiality is not rebutted, it is an abuse of discretion for the court to fail to remove the challenged juror. *Wach*, 2001 UT 35, ¶ 27 ("Once statements are made during voir dire that facially raise a question of partiality or prejudice, an abuse of discretion occurs unless the challenged juror is removed by the court or unless the court or counsel investigates further and finds the inference rebutted." (quotation simplified)). The court has a "duty to ensure a fair trial," and "once a for-cause challenge is raised, a trial court has an obligation . . . to be lenient in granting challenges for cause." *State v. King*, 2006 UT 3, ¶ 19, 131 P.3d 202.

¶19    In addition to showing that the district court "committed legal error by failing to excuse for cause" Juror 14 and Juror 26, Taylor also must show that this "failure to strike the prospective jurors prejudiced [him]." *Wach*, 2001 UT 35, ¶ 24; *see also State v.*

*Menzies*, 889 P.2d 393, 398 (Utah 1994) ("To prevail on a claim of error based on the failure to remove a juror for cause, a defendant must demonstrate prejudice, [that is], show that a member of the jury was partial or incompetent."), *superseded on other grounds by constitutional amendment as recognized in State v. Goins*, 2017 UT 61, 423 P.3d 1236. However, the United States Supreme Court "has repeatedly recognized that the seating of any juror who should have been dismissed for cause requires reversal." *State v. King*, 2008 UT 54, ¶ 16, 190 P.3d 1283; *see also id.* ¶ 28 ("A defendant who is convicted of a crime by a jury comprised of even one member who has exhibited actual bias is entitled to a new trial. This principle of law is grounded in the presumption that the presence of a biased juror so undermines the fairness and impartiality of the verdict that the Sixth Amendment right to a fair trial can be preserved only by setting aside the conviction." (citation omitted)); *State v. Carrera*, 2022 UT App 100, ¶ 83, 517 P.3d 440, *cert. denied*, 525 P.3d 1264 (Utah 2023). Thus, in a case such as this where the challenged jurors served on the jury that convicted the defendant, the prejudice showing is necessarily satisfied.[3] We therefore need further assess only whether the district court's failure to excuse the challenged jurors for cause amounted to an abuse of the court's discretion. We consider each juror in turn.

---

3. Additionally, a defendant is required to "utilize all available peremptory challenges before the issue of jury bias can be raised on appeal." *Turner v. University of Utah Hosps. & Clinics*, 2013 UT 52, ¶ 32, 310 P.3d 1212. But a defendant is not required "to use those challenges in a particular way, thus leaving the door open to their tactical use." *Id.* Hence, "as long as (a) all of the party's peremptory challenges were used and (b) a juror who was previously challenged for cause ends up being seated on the jury, the issue of jury bias has been preserved." *Id.* There is no dispute that these preservation requirements were met in the instant case.

## I. Juror 14

¶20     Taylor concedes that "the mere fact that Juror 14 worked in law enforcement would not per se disqualify him from serving on a jury" but argues that "Juror 14's responses demonstrated that he was biased against defendants and biased in favor of law enforcement." The State responds that "Juror 14's voir dire responses and demeanor showed only that he had an 'open mind' and would 'apply the law as . . . instructed,'" (omission in original) (quoting *State v. Cobb*, 774 P.2d 1123, 1127 (Utah 1989)), and that Taylor "therefore has not proven that Juror 14 was actually biased." We agree with Taylor.

¶21     As emphasized by the State, Juror 14 did initially indicate he felt that, notwithstanding his law enforcement background, he "could otherwise be fair and impartial" and that he could "hold the prosecution to the burden of proof" and "afford the defendant the presumption of innocence." But his responses to later questioning regarding factual innocence raised some evidence of bias. Most importantly, he agreed that in reflecting over the prior cases that he had been involved in—including "about 20" sexual abuse cases—that he had "never had any cases . . . that were factually innocent" and that he would "give the same courtesy of believing that of another officer."

¶22     In relation to this specific exchange, the State argues that the question posed "was not fair" and that "[b]ecause of the confusing compound nature of the question, it is impossible to know . . . what Juror 14's answer meant." Although we recognize that certain questions leading up to this exchange were imprecise, shifting between asking about individuals who Juror 14 "arrested" and individuals who he "charged," we do not see that this inconsistency renders Juror 14's response incomprehensible. For even if the examination was focused on the more limited group of people Juror 14 arrested who were later charged, Juror 14's responses clearly indicated that he believed none of those

people were innocent and that he would believe such was the case in regard to the records of other police officers. In other words, he would find it difficult to apply the presumption of innocence that must be afforded a criminal defendant. Thus, we agree that this particular exchange exposed evidence of bias and resulted in a presumption of bias.

¶23 Furthermore, the prosecutor's few follow-up questions did nothing to rebut the presumption of bias. They simply clarified that Juror 14 does not, as a police officer, make charging decisions and that he also "underst[ood]" the presumption of innocence and the State's burden of proof. The questions did nothing to elicit more information regarding Juror 14's assessment that he—and presumably other officers, who he was inclined to assume had a similar record—had never pursued or presented any cases where the person charged was innocent.

¶24 With this backdrop, it was an abuse of the district court's discretion to refuse to strike Juror 14 for cause based on the reasoning that "either he's not being honest with the Court . . . or he should be left in." As discussed above, it is *the court's* responsibility to either strike a presumably biased juror or to investigate further to discover "whether the juror can stand in attitude of indifference between the parties," *West v. Holley*, 2004 UT 97, ¶ 16, 103 P.3d 708 (quotation simplified). And such an assessment could not be made without further questioning aimed at better understanding Juror 14's statements regarding factual innocence and how his view on that subject might impact his ability to actually apply (instead of simply understand) the presumption of innocence to which Taylor was entitled. Indeed, the court itself recognized that additional questioning in this area "would've been more telling to the Court" than the information that had been elicited. But instead of asking any "more telling" questions, the court appears to have simply determined that Juror 14 was honest in his assurances that he could be fair and impartial and that, therefore, he should remain in the jury pool. Because

Juror 14's assurances alone were not enough to rebut the presumption of bias, *see id.* ¶ 15, the court abused its discretion in leaving him in the jury pool.

## II. Juror 26

¶25 Additionally, Taylor argues that Juror 26 should have been excluded because she "demonstrated an actual bias in favor of law enforcement, which was not rebutted."[4] The State responds that although "Juror 26 initially stated that she would give more weight to an officer's testimony than the 'general public,'" later responses clarified that she "had the ability to set aside [her] stated bias," (alteration in original) (quoting *State v. Arriaga*, 2012 UT App 295, ¶ 16, 288 P.3d 588, *cert. denied*, 298 P.3d 69 (Utah 2013)). Again, we agree with Taylor.

¶26 From the beginning, Juror 26 expressed a clear bias in favor of law enforcement, stating that she thought law enforcement testimony "has a greater weight than general public testimony" and agreeing that she would "give that more weight than" the testimony of "anybody else that testified." And even after the prosecutor reminded Juror 26 that each witness in the trial would be taking an oath to be truthful, she only agreed that would "[m]aybe" be enough to "even the score for [her]."

¶27 We do not see that this bias was at all rebutted. While Juror 26 did thereafter answer in the affirmative that she could "follow the instructions of the judge, and render a fair and impartial

---

4. We recognize that our analysis regarding Juror 14 is alone sufficient to require remand for a new trial. *See State v. King*, 2008 UT 54, ¶ 28, 190 P.3d 1283 (stating that a defendant convicted by a jury "of even one" biased member is entitled to a new trial). We nonetheless choose to also briefly analyze the similar argument advanced in relation to Juror 26 in the interest of providing guidance that might prove useful in future cases.

verdict based on solely the evidence," this self-assessment seems questionable in the face of her continued responses indicating she would give more weight to the testimony of law enforcement witnesses. Specifically, she continued to agree that "law enforcement officers, as a general rule, get . . . a lot of weight with [her]" and that because they "have more experience," they "can make better judgments at a time that's . . . more emotional for other people" and their testimony should therefore "carry a greater weight." Indeed, when defense counsel clarified that Juror 26's position was not that she "wouldn't still give more weight to the police officers," but that she would also "give everybody else a fair hearing and allow them to try and come up to the level that the police officers [were] at with [her]," she answered affirmatively. And when pressed as to what she would do "if it came down to the police officer's word versus the defendant," she acknowledged that she "would have a hard time" and "would have to look at all of the testimony" and "talk about it with the other jurors."

¶28 Under these circumstances, Juror 26's clearly expressed bias in favor of law enforcement stood unrebutted. She referred throughout the examination to the additional weight that she would give police officer testimony, clarifying that her self-assessment that she could be fair and impartial in considering the evidence reflected not a commitment to consider all witnesses on an equal playing field but, instead, only a commitment to give other witnesses the chance "to try and come up to the level" of law enforcement. We further note that Juror 26's expressed intention to confer with her fellow jurors on close calls does little to quell concerns of bias here where one of those other seated jurors not only also showed a bias in favor of police officers, but *was* a police officer himself—likely giving his presumptively biased views "a lot of weight" with Juror 26. Nor do we see that the district court's assessment that Juror 26 would follow the court's instructions does anything to rebut the presumption of

bias. Thus, Juror 26's clearly declared bias was not adequately rebutted in this case, and it was an abuse of the district court's discretion to leave her in the jury pool.

## CONCLUSION

¶29    The district court abused its discretion in refusing to strike Juror 14 and Juror 26 for cause. Because actually biased jurors served on Taylor's jury, we vacate his conviction and remand the matter to the district court for a new trial.

————————